The plaintiff, alleging herself to be the sole heir and distributee of the estates of her father, Isiah Davis, and her mother, Sadie Davis, wife of Isiah, both of whom are now deceased, brought this action to impress a trust upon lands alleged to have been purchased by defendant with the funds of her mother, entrusted to him for purchase in her own behalf, the title to which property, it is alleged, he wrongfully took in his own name. The defendant was brother of Isiah Davis.
It is alleged in the complaint that Sadie Davis was the beneficiary in certain insurance policies on the life of her husband, the proceeds of which were at the death of Isiah Davis received by her and turned over to her brother-in-law, the defendant, for deposit in the bank. That during said time Sadie Davis was sick and unable to attend to her affairs, *Page 49 
and much of the time bedridden; and had to depend upon her brother-in-law for advice and transacting her business affairs; that through the advice of the defendant she turned over to him the money she acquired from her husband's insurance to be invested by him in a certain lot, subject to this controversy, the purchase to be made in her name and the title made to her; that the land was purchased with the funds thus entrusted to the defendant, but that defendant, in violation of his duty to her, took title in his own name.
It is alleged that Sadie Davis was too ill to examine the papers and was unaware of the wrongful action of defendant up to the time of her death; and that the facts were not discovered until some time thereafter. It is further alleged that a store building which had been constructed on an adjoining lot of a third party by Isiah Davis, the right having been recognized by said third party, was removed to the lot in controversy; and that the defendant at the instance of plaintiff's mother, caused to be erected a residence on the said lot; and that during the construction thereof the said Sadie Davis furnished to defendant from time to time funds which were used in the construction of the said residence.
The defendant denied the principal allegations of the complaint; alleged that the money expended for both the lot and the construction of the house were his own private funds; that the removal of the store from the property of Alice Davis to the lot now in controversy was merely permitted by him, and to this building he now asserts no claim.
On the trial the defendant demurred ore tenus to the complaint as not stating a cause of action, which demurrer was overruled, and the defendant excepted.
Mary Frances Davis testified that she was the daughter of Isiah Davis and Sadie Davis, with whom she formerly lived. (It is admitted that Mary Frances Davis is the only heir of Isiah Davis and Sadie Davis.) That her father had two insurance policies on his life in the Metropolitan Insurance Company amounting to $680, and the insurance on the life of her brother Samuel; (it is admitted that this money was paid and placed in the bank in the name of Sadie Davis in the amount of $1,150). That at the time of the death of the father, her mother was living on the Alice Davis property across the street from the land in question, upon which Sadie Davis made arrangements to build a home, and that this was purchased by money furnished by Sadie Davis. Witness stated that she and the defendant came to New Bern to see Mr. O'Hara and wife about the place her mother wanted to buy, and that they gave him the money and he told witness to come down to the office so that he could get the deed straightened out. The next day, however, her mother was sick and witness had to stay with her, and Lacy, the defendant, went. That the land was purchased by Lacy Davis from R. O'Hara and wife and this *Page 50 
witness was with him when arrangements for the purchase were made. That Lacy Davis showed the deed to her mother but kept it in his possession in his safe, telling her that the deed was made in her name. Her mother requested Lacy to manage her business.
The witness testified that defendant made arrangements to get lumber, brick, etc., for building a home and her mother gave checks to him for payment on several occasions.
Lacy was helping to build, but all the workmen were paid by Sadie Davis, and within a month from the purchase plaintiff and her mother moved into the new house where they resided until the death of her mother. About a month after the death of Sadie Davis, Lacy Davis and his wife moved in with the plaintiff and while they were living there the premises were damaged by fire and repairs and additions were made to the house. That this addition and repair was paid out of plaintiff's own money which she had received from insurance upon the life of her mother, Sadie Davis.
After rebuilding, the defendant and his wife again returned to the house and continued to reside there until serious trouble with the defendant caused her to leave the home, to which she had not returned.
The witness stated that she was 16 years old when her mother died, and defendant was appointed as her guardian. Lacy Davis paid the burial expenses of plaintiff's mother and filed his final account as guardian in which account he admitted that he owed $453.35; that in the settlement she received $11.20 and had previously received $120.
T. C. Fitzgerald, testifying for plaintiff, stated that he was employed by the Branch Banking Trust Company, and Assistant Trust Officer since 1930. That he had in his hands the ledger accounts of Frances and Sadie Davis from August, 1940, to July 12, 1941, and of Frances Davis from July 12, 1941, to October 1, 1941, and that both accounts are now closed. The ledger sheets in the accounts of Frances Davis and Sadie Davis, and for Sadie Davis and L. H. Davis were introduced in evidence. The account shows a withdrawal of $225 on the 15th day of October, 1940.
Ollie Lee, testifying for plaintiff, stated that she frequently visited the Davis home and knew that Sadie Davis received money from the insurance companies, Elks Lodge, and the Government, and received from various policies $245, $448, and $100, and that she received from insurance on Samuel $650.
The following question was asked this witness on principal examination:
 Question: "Did you hear Sadie, or did Sadie tell you what she intended to do with the money?" *Page 51 
Question and answer were admitted over defendant's objection and exception.
 Answer: "Witness states that Sadie told her in the presence of Mary Frances and Lacy Davis that she was going to buy a lot and build a house for Mary Frances. That Sadie moved into the house after it was finished, with her daughter Frances and no one else, until she died in July, 1941. That after the death of Sadie, Lacy stayed up there at night with Mary Frances about two months before he and his wife moved in."
Miles Lee, surviving brother of Sadie Davis, testified that Sadie told him that she had collected some money and was going to build a house on the O'Hara place and that Lacy got the deed for her. Sadie Davis told this witness that she wanted Lacy to be guardian for Mary Frances and turned everything over into his hands.
Jarvis Tankard testified that he knew both Isiah and Sadie Davis. At the time of Isiah's death the Davis' were living on the Alice Davis place. At the time of her death Sadie Davis was living with Mary Frances in her new home. She wanted the house so her daughter Mary Frances would not be out of doors. That she told witness that she was building the house for her daughter.
Upon the conclusion of plaintiff's evidence the defendant moved for judgment of nonsuit, which was overruled. Defendant excepted.
Lacy Davis, the defendant, testified that he was appointed by the court as guardian for Mary Frances Davis. That he purchased the lot in controversy from O'Hara and wife, agreeing to pay $215 for it, paying $115 in cash and the balance with a deed of trust to Pearl J. Martin, Trustee; that the cash was paid by his wife in his presence. That he paid for the lot out of his own funds and constructed the residence thereupon the same way, borrowing money in order to do so. That he paid out money for the support of Frances Davis, his ward, under order of court, closed his guardianship and paid the remainder in his hands thereupon.
Defendant offered in evidence the deed of O'Hara and wife to himself, of date October 15, 1940; and therewith certain deeds of trust to Martin, Trustee for O'Hara; to William Dunn, Trustee, Morris Plan Bank, and like instruments purporting to be in connection with borrowing money.
The defendant testified that the lot was purchased, the residence thereon constructed and repaired and enlarged out of his own funds and largely the money borrowed from the Morris Plan Bank; and that neither Sadie nor Mary Frances had ever given him a penny towards the house. *Page 52 
Defendant then offered evidence tending to show the disposition of money in his hands as guardian of plaintiff, covering substantial amounts for other purposes, testifying that the fund was thus absorbed.
Mrs. Lacy Davis, wife of the defendant, testified in corroboration of his statement that the money which went into the purchase of the lot and construction of the house was paid for by defendant principally with loans from the Morris Plan Bank.
Plaintiff, in rebuttal, testified that the first money paid on the lot was $215 which came from the Branch Banking Trust Company and was her mother's money. This transaction took place at O'Hara's house and witness saw defendant give him the money and get a receipt for the $215. O'Hara told him to come down the next day to get the deed. Witness did not know that defendant had given a mortgage. At the conclusion of all the evidence the defendant demurred to the evidence and moved the court for judgment as of nonsuit, which was denied, and defendant excepted.
The following issue was submitted and answered as indicated:
 1. Was the land in question, title to which was taken in the name of the defendant, purchased with money belonging to Sadie Davis, deceased, mother of the only heir at law and next of kin, the plaintiff? Answer: Yes.
There ensued the judgment upon the verdict declaring the plaintiff to be the owner of the premises with the improvements and the appurtenances thereon erected and permanently fixed, and that a writ of possession be issued to dispossess the defendant and put plaintiff in possession of the property. A further paragraph of the judgment declared Lacy H. Davis to be the holder of the title as trustee of and for Mary Frances Davis, "which trusteeship is now terminated, and that the said Mary Frances Davis is the owner in fee of the said described property, together with the improvements thereon." It was ordered that a transcript of the judgment be recorded on the Book of Deeds in the registry of Craven County, and reference to be made thereon upon the margin of the book and page upon which said deed from R. O'Hara and wife to said Lacy H. Davis is now recorded.
The defendant, having made a motion to set aside the verdict because of errors committed upon the trial and having noted his exception to the refusal of said motion, in apt time objected and excepted to the judgment aforesaid, and appealed to this Court, assigning errors.
Defendant's objection to the introduction in evidence of statements made by Mrs. Sadie Davis with regard to her ownership of the property we do not regard as tenable. First, because in one instance the statement was made while the defendant himself was present (and made no contrary statement); and second, because in other instances evidence of a like character was subsequently introduced without objection.
The real controversy in the case and the point upon which decision hinges is whether the evidence taken in its most favorable light for the defendant is sufficient to go to the jury as a basis for the declaration of a resulting trust in favor of plaintiff or that the defendant is trustee exmaleficio for the plaintiff, with respect to the lands alleged to have been purchased out of the funds of her mother, Sadie Davis.
It is to be noted that this suit is prosecuted by plaintiff as heir at law of Sadie Davis and not by the original party who sustained the wrong. However, the relation between them is of such a character as to give her the legal right to pursue the fund as the sole interested person, and representative of the rightful grantee. The trust, if it is found to exist, went into effect when title was wrongfully taken in the name of the defendant. Shields v. Harris, 190 N.C. 520, 130 S.E. 189; Norcum v.Savage, 140 N.C. 472, 473, 53 S.E. 289; Moorman v. Arthur, 90 Va. 455,18 S.E. 869.
While the evidence is contradictory, yet that in behalf of the plaintiff is very direct and specific and tends to show such a relationship as existing between Sadie Davis and her brother-in-law, the defendant, and such a violation of trust on the part of the latter, as would make him either the trustee of a resulting trust on the principle of following the fund, or a trustee ex maleficio because of fraud and misconduct with respect to the property purchased by him. Creech v. Creech, 222 N.C. 656,24 S.E.2d 642; Avery v. Stewart, 136 N.C. 426, 48 S.E. 775; 54 Am.Jur., "Trusts," Sec. 208, n. 4, p. 162; Id., Sec. 218, n. 77, p. 168;Speight v. Branch Banking Trust Co., 209 N.C. 563, 183 S.E. 734;Lefkowitz v. Silver, 182 N.C. 339, 109 S.E. 56, 23 A.L.R., 1419.
If we wish to preserve the distinction and nomenclature obtaining here, it may be noted that the issue submitted relates to the first mentioned class of trust. The motion for judgment as of nonsuit was properly denied.
The record discloses no sound reason for disturbing the result of the trial, and we find therein
No error. *Page 54