ELIZABETH G. WOODARD AND BESSIE W. CAMPBELL v. W. G. MORDECAI, Co-TRUSTEE OF THE ESTATE OF MOSES W. WOODARD, DECEASED; MOSES W. WOODARD, JR.; MOSES W. WOODARD III; MARY WHITE WOODARD McDONALD; AND NANCY ELIZABETH WOODARD.

(Filed 21 November, 1951.)

1. Trial § 55—

Upon trial by the court upon agreement, the court is required to find the facts on all issues of fact joined on the pleadings, to declare his conclusions of law upon the facts found in such manner as to render them distinguishable from the findings of fact, and to enter judgment accordingly. G.S. 1-185.

2. Same—

In a trial by the court under agreement of the parties, the trial court is required to find and state only the ultimate facts and not the evidentiary facts.

3. Trusts § 14a—

When the instrument commands the trustee to perform some positive act the power is mandatory, when the instrument provides that the trustee may either exercise a power or refrain from exercising it, or leaves the time, manner, and extent of its exercise in the discretion of the trustee, the power is discretionary.

4. Same—

The court will always compel the trustee to exercise a mandatory power; but will not undertake to control the exercise of a discretionary power except to prevent abuse of discretion.

5. Same—

A trustee abuses his discretion in exercising or failing to exercise a discretionary power if he acts dishonestly, or if he acts with an improper motive even though not a dishonest one, or if he fails to use his judgment, or if he acts beyond the bounds of a reasonable judgment.

6. Same: Trusts § 19b—

A provision in a will that the trustee might convey any part or all of the share of the corpus of a beneficiary to the beneficiary if in the trustee's judgment it is necessary or best for the welfare of the cestui and consistent with the welfare of trustor's family and estate, confers a discretionary power.

**7. Same: Trial § 55—Judgment held based upon findings of ultimate facts as distinguished from conclusions of law.**

In an action to compel a trustee to exercise a discretionary power upon the ground of abuse of discretion in that the trustee acted with the improper motive of prejudice and failed to use his judgment, *held* findings by the court that the trustee had not abused his discretion or acted arbitrarily, that the trustee's conclusion not to exercise the power was consistent with the intentions of trustor and that the exercise of the power was not for the best welfare of the beneficiaries nor the welfare of the family (the basis set out in the instrument for the determination of whether the power should be exercised or not) are findings of ultimate facts as distinguished from legal conclusions, and support the conclusion that the beneficiaries were not entitled to compel the exercise of the power.

**8. Evidence § 26½—**

Where plaintiffs introduce evidence tending to show they had been harassed by litigation over the trust estate, defendants are entitled to introduce judicial records tending to show that plaintiffs themselves had instituted such litigation in order to rebut plaintiffs' implication.

**9. Appeal and Error § 39e—**

The admission of evidence over objection cannot be held prejudicial when evidence of the same import is theretofore or thereafter admitted without objection.

**10. Evidence § 43e—**

Where the mental state of trustee in refusing to exercise a discretionary power is in issue, a letter written by him to his co-trustee setting forth his motives and reasons for refusing to exercise the power upon the original application of the beneficiaries *is held* competent even though the letter was never mailed, since it is a relevant circumstance tending to show his state of mind at the time in question.

**11. Evidence § 18—**

Evidence otherwise incompetent may be competent for the purpose of corroborating the sworn testimony of the witness at the trial.

**12. Appeal and Error § 39e—**

The admission of immaterial evidence in a trial by the court under agreement of the parties will not be held for reversible error when its admission could not have affected the decision of the court.

APPEAL by plaintiffs from *Bone, J.,* at May Term, 1951, of WAKE.

Consolidated civil actions by Elizabeth G. Woodard and Bessie W. Campbell against W. G. Mordecai, as a successor trustee under the will of Moses W. Woodard, and others, to require defendant trustee to exercise a discretionary power granted by the will, and to join his co-trustee, the First-Citizens Bank & Trust Company, in conveying parts of the trust *corpus* to the plaintiffs free from the trust.

The record discloses the following facts:

1. Moses W. Woodard died at his domicile in Wake County, North Carolina, on 27 April, 1915, leaving his wife, Elizabeth G. Woodard, his son, Moses W. Woodard, Jr., and his daughter, Bessie W. Campbell.

2. Moses W. Woodard left a last will, which was forthwith admitted to probate in the Superior Court of Wake County. The portions of this instrument pertinent to this litigation are as follows:

Item Five: I give, devise and bequeath all the rest and residue of my property and estate of whatsoever nature and wheresoever the same may be to Charles H. Belvin and Joseph G. Brown, both of Raleigh, N. C. to be by them held in trust for the use and benefit of my said wife and my said son and my said daughter in the manner following:

The said Trustees if they deem best, shall have the power (without being required to get an order of court for that purpose) to sell, convey and convert into money, any part or all of said trust estate and to receive the proceeds of such sale; to invest the same and also any money belonging to my estate as they deem best and if they see fit, to sell, convey and convert into money any or all of such investments and to reinvest the proceeds of such sale; to again sell, convey and convert into money and reinvest, when, as often, and in such manner as they see fit—such sales to be private or public, for cash or on time, as such trustees deem best—to make, execute and deliver any and all deeds or other paper writings and to do all things requisite and necessary to effectually carry out the trusts herein declared; to receive the income from such trust estate and from all such investments and after paying out from such income the taxes and other charges on such trust estate, repairs, insurance and other expenses connected therewith, and the costs and charges of executing the trust to dispose of such trust estate and the income therefrom as follows:

"A." Until the marriage of my said wife, Elizabeth, or if she does not marry again, then until her death, unmarried, to divide semiannually the net income from said trust estate into as many equal shares as there shall be wife of mine, then alive and unmarried, and son of mine then alive or son of mine dead but with lineal descendants then alive and daughter of mine then alive or daughter of mine dead but with lineal descendants then alive, and to pay such shares of income to such wife, son and daughter or the lineal descendants of such deceased son or daughter—such lineal descendants to stand *per stirpes* in the place of their deceased parents and together take the share which such deceased parent would have taken if alive at that time.

Upon the marriage or death of my said wife her interest in said trust estate shall cease and determine and shall go and belong to my said son and daughter and their lineal descendants in the same manner as is here-

inafter provided for the holding and disposing of the original shares of said son and daughter in said trust estate.

"B." During the natural life of my said daughter, Bessie, to divide semi-annually the net income from said trust estate into as many equal shares as there shall be daughter of mine then alive and wife of mine, then alive and unmarried, and son of mine then alive or son of mine dead but with lineal descendants then alive and to pay such shares of income to such daughter, wife and son or the lineal descendants of such deceased son—such lineal descendants to stand *per stirpes* in the place of their deceased father and take the share which he would have taken if alive at that time.

Upon the death of my said daughter leaving lineal descendants surviving her, said Trustees shall divide the *corpus* of said trust estate into as many equal shares as there shall be such daughter deceased and wife of mine alive, and unmarried, at that time and son of mine then alive or son of mine dead but with lineal descendants then alive and shall pay, deliver and convey absolutely and in fee simple one of said shares *per stirpes,* to such lineal descendants as my said daughter shall have so left her surviving, upon which payment the trust as to that share shall cease and determine.

Upon the death of said Bessie without leaving any lineal descendants surviving her, then her interest in said trust estate shall cease and determine and shall go and belong to my said wife and son and his lineal descendants in the same manner as is herein provided for the holding and disposing of the original shares of my said wife and son in said trust estate.

"C." During the natural life of my said son, Moses, to divide semi-annually the net income from said trust estate into as many equal shares as there shall be son of mine then alive and wife of mine then alive and unmarried and daughter of mine then alive or daughter of mine dead but with lineal descendants then alive and to pay such shares of income to such son, wife and daughter or the lineal descendants of such deceased daughter—such lineal descendants to stand *per stirpes* in the place of their deceased mother and together take the share which such deceased mother would have taken if alive at that time.

Upon the death of my said son leaving lineal descendants surviving him the said Trustee shall divide the *corpus* of such trust estate into as many equal shares as there shall be such deceased son and wife of mine alive and unmarried at that time, and daughter of mine alive or daughter of mine dead but leaving lineal descendants alive at that time and shall pay, deliver and convey absolutely and in fee simple one of said shares *per stirpes* to the lineal descendants which the said Moses shall have so

left him surviving, upon which payment the trust as to that share shall cease and determine.

Upon the death of said Moses without leaving any lineal descendants surviving him, then his interest in said trust estate shall cease and determine and shall go and belong to my said wife and daughter and such daughter's lineal descendants in the same manner as is herein provided for the holding and disposing of the original shares of said wife and daughter in said trust estate.

Item Six: All the property and estate acquired by said Trustees by means of the assets belonging to my estate, whether by reason of increase of values or by change of investment or otherwise, shall be held by said Trustees upon the same trusts as those declared for the holding of the property and estate originally bequeathed and devised to them. No investment shall be made nor shall any investment be changed nor any sale be made, deed or other paper writing, delivered, except by the consent and concurrence of both Trustees.

The said Trustees (if they in their judgment deem it necessary or best for the welfare of the *cestui que trust,* and consistent with the welfare of my family and estate) may from time to time, advance, deliver and convey absolutely and in fee simple, free from the trust, to my said wife if unmarried or to my said daughter after she arrives at the age of 21 years or to my said son after he arrives at the age of 21 years, any part or all of the share of the *corpus* of the trust estate above provided for his or her benefit and thus terminate the trust so far as it affects the property so advanced, delivered and conveyed and the receipt of such *cestui que trust* shall be a complete release and discharge of said Trustees for so doing. But in case of such advancement the amount so advanced shall be counted in estimating the amount of the *corpus* of the estate for division and charged up to the share of the person so receiving the same and deducted from the payment on division to his or her lineal descendants; and in estimating the income for division, interest shall be counted on such advancement at the rate of 3% per annum and be charged up to the share of income of the person so advanced and be deducted from the payment of income to the party so advanced or to his or her lineal descendants.

Item Seven: I hereby nominate, constitute and appoint the said Chas. H. Belvin and Joseph G. Brown, Executors of this my last will and testament, and also Guardians of my said daughter and of my son until their arrival at the age of 21 years and direct that neither of them be required to give any bond, either as Executor or as Trustee or as Guardian.

Said Executors and Trustees for the purpose of settling my estate and for the purpose of making the divisions and settlement of the trust estate

as above directed shall have the power and are hereby authorized as they see fit (without being required to get an order of court for that purpose) to sell at private or public sale, for cash or on time, and to convey any part or portion of said property and estate, and to receive the proceeds of such sale.

Upon the refusal of either the said Belvin or Brown to qualify as Executor or upon the death of either, the other, having qualified, shall have all the rights and powers and be subject to all the duties herein provided for them jointly as Executors.

Upon the refusal of either the said Belvin or Brown to act as Trustees or upon the death of either after acting as Trustee without having appointed a substitute as below provided, the successor of the one so refusing to act or so dying, without appointing such substitute, shall be appointed by the proper court in the manner provided by law and the Trustee so appointed shall have all the rights and powers and be subject to all the duties herein provided for the original Trustee so refusing to act or so dying.

If either the said Belvin or the said Brown shall refuse to act as trustee or if after having acted as Trustee, shall be unwilling or unable to continue to execute the trust and shall desire to be discharged therefrom he may by deed duly executed and registered in Wake County, N. C., declare such desire, and appoint some other person or corporation to act as Trustee in his place and transfer to such person or corporation his interest in said property and estate, whereupon such original Trustee shall be released from the further discharge of the trust and such appointee upon his acceptance of said trust shall have all the rights and powers and be subject to all the duties provided in this Will for the Trustee so making such appointment.

3. The *corpus* of the trust created by the will of Moses W. Woodard has been administered by the original trustees or successor trustees named by the court ever since the will was proven. The First-Citizens Bank & Trust Company, which is hereafter called the corporate trustee, and W. G. Mordecai, who is hereafter designated as the individual trustee, have been serving as successor trustees since 2 May, 1949. The *corpus* of the trust now consists of three store buildings in the City of Raleigh, which are being rented by the trustees and which have yielded an average yearly income of $6,718.30 to each of the beneficiaries named in the will, that is to say, Elizabeth G. Woodard, Bessie W. Campbell, and Moses W. Woodard, Jr., for the past twenty years. As a result of a new lease of one of the buildings, the *corpus* of the trust will yield an annual income of at least $14,000.00 to each of the beneficiaries in the immediate future.

4. Elizabeth G. Woodard, who has not remarried, and Bessie W. Campbell, who has no living issue, live together in a substantial dwelling

owned by the latter at Pinehurst, North Carolina. Moses W. Woodard, Jr., resides in Raleigh, North Carolina, and has three children, namely: Moses W. Woodard III, Mary White Woodard McDonald, and Nancy Elizabeth Woodard.

5. Before commencing this litigation, the plaintiffs, Elizabeth G. Woodard and Bessie W. Campbell, made written demand on the trustees that they convey one-third of the trust *corpus* to each of the plaintiffs free from the trust. The corporate trustee agreed to comply with the demand, but the individual trustee refused to do so.

6. Each of the plaintiffs thereupon brought an action against the individual trustee and the other defendants, praying the court to compel the individual trustee to join the corporate trustee in the demanded conveyances or to remove him from his fiduciary office. Under a subsequent agreement of the parties, these actions were consolidated for trial, judgment, and all other purposes under the title assigned to them on this appeal.

7. The complaints of the plaintiffs allege in detail that it is necessary or at least best for their welfare that the trustees forthwith convey one-third of the trust *corpus* to each of them free of the trust; that such action by the trustees would be consistent with the welfare of the family and estate of the testator; and that in refusing to exercise his discretionary power in their favor the individual trustee abuses his discretion in these respects: (1) He acts with an improper motive, to wit, prejudice; and (2) he fails to use his judgment, *i.e.,* he bases his refusal upon an arbitrary decision or whim rather than upon a consideration of the relevant circumstances.

The answers of the defendants deny the material allegations of the complaints, and aver, in substance, that the individual trustee acted in good faith and with reason in rejecting the demand of the plaintiffs.

8. The parties waived trial by jury, and submitted the issues of fact and law to his Honor, Walter J. Bone, the presiding judge. After hearing the evidence adduced by the plaintiffs and the defendants for the avowed purpose of sustaining their respective allegations, Judge Bone entered a written judgment, containing the statements set forth in the opinion and denying the plaintiffs the relief prayed. The plaintiffs excepted to the judgment and appealed.

*Bunn & Arendell, Harris & Poe, and Taylor & Allen for plaintiffs, appellants.*

*Fuller, Reade, Umstead & Fuller for defendant, W. G. Mordecai, co-trustee, appellee.*

*Brassfield & Maupin for the defendant, Moses W. Woodard, Jr., appellee.*

*T. Lacy Williams for the defendants, Moses W. Woodard III, Mary White Woodard McDonald, and Nancy Elizabeth Woodard, appellees.*

ERVIN, J. The plaintiffs make these assertions by their assignments of error:

1. That the judge did not observe the provisions of G.S. 1-185, specifying that "upon the trial of an issue of fact by the court, its decision shall be given in writing, and shall contain a statement of the facts found, and the conclusions of law separately."

2. That the judge committed prejudicial error in admitting certain testimony tendered by the defendants.

These objections will be considered in their numerical order.

The contention of the plaintiffs that the judge did not comply with G.S. 1-185 is epitomized in their brief in this fashion: "An examination of the judgment fails to disclose any separate finding of facts, or any finding of material facts."

This contention presents these problems: (1) What does G.S. 1-185 require of the judge? (2) What are the material facts in this litigation? The first problem necessitates a construction of the statute; and the second involves a consideration of the rules under which courts require trustees to exercise powers granted by trust instruments.

Where a jury trial is waived by the parties to a civil action, the judge who tries the case is required by G.S. 1-185 to do three things in writing: (1) To find the facts on all issues of fact joined on the pleadings; (2) to declare the conclusions of law arising upon the facts found; and (3) to enter judgment accordingly. *Dailey v. Insurance Co.,* 208 N.C. 817, 182 S.E. 332; *Shore v. Bank,* 207 N.C. 798, 178 S.E. 572. In addition, he must state his findings of fact and conclusions of law separately. *Foushee v. Pattershall,* 67 N.C. 453. The judge complies with this last requirement if he separates the findings and the conclusions in such a manner as to render them distinguishable, no matter how the separation is effected. 64 C.J., Trial, section 1091.

There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts. *Long v. Love,* 230 N.C. 535, 53 S.E. 2d 661; *Brown v. Hall,* 226 N.C. 732, 40 S.E. 2d 412; *Hawkins v. Moss,* 222 N.C. 95, 21 S.E. 2d 873. G.S. 1-185 requires the trial judge to find and state the ultimate facts only. *Eley v. R. R.,* 165 N.C. 78, 80 S.E. 1064; *Bloss v. Rahilly,* 16 Cal. 2d 170, 104 P. 2d 1049; *McCarty v. Sauer,* 64 Idaho 748, 136 P. 2d 742; *Black v. Gunderson,* 46 S.D. 642, 195 N.W. 653; *Sandall v. Hoskins,* 104 Utah 50, 137 P. 2d

819; *Gerve v. Medford Bridge Co.,* 205 Wis. 68, 236 N.W. 528; 64 C.J., Trial, section 1099.

The powers of a trustee are either mandatory or discretionary. A power is mandatory when it authorizes and commands the trustee to perform some positive act. *Brummett v. Hewes,* 311 Mass. 142, 40 N.E. 2d 251; *In re Carr's Estate,* 176 Misc. 571, 28 N.Y.S. 1215. A power is discretionary when the trustee may either exercise it or refrain from exercising it, *Welch v. Trust Co.,* 226 N.C. 357, 38 S.E. 2d 197; *Bennett v. Norton,* 171 Pa. 221, 32 A. 1112; or when the time, or manner, or extent of its exercise is left to his discretion. *Gosson v. Ladd,* 77 Ala. 223; *City of San Antonio v. Zogheib* (Tex. Civ. App.), 70 S.W. 2d 333.

The court will always compel the trustee to exercise a mandatory power. *Albright v. Albright,* 91 N.C. 220. It is otherwise, however, with respect to a discretionary power. The court will not undertake to control the trustee with respect to the exercise of a discretionary power, except to prevent an abuse by him of his discretion. The trustee abuses his discretion in exercising or failing to exercise a discretionary power if he acts dishonestly, or if he acts with an improper even though not a dishonest motive, or if he fails to use his judgment, or if he acts beyond the bounds of a reasonable judgment. The American Law Institute's Restatement of the Law of Trusts, section 187; *Carter v. Young,* 193 N.C. 678, 137 S.E. 875; 65 C.J., Trusts, section 539.

The will expressly authorizes the successor trustees to exercise all the powers conferred by it upon the original trustees. The power to convey parts of the trust *corpus* to the widow and children of the testator free from the trust is clearly discretionary. The trustees are permitted to make such conveyances, but they are not required to do so. The plaintiffs recognize the discretionary nature of the power. They predicate their causes of action on the theory that the court must compel the individual trustee to join the corporate trustee in conveying parts of the trust *corpus* to them free from the trust to prevent an abuse by the individual trustee of the discretion reposed in him. Properly interpreted, their complaints allege that in refusing to exercise his discretionary power in their favor the individual trustee abuses his discretion in these respects: (1) That he acts with an improper motive, to wit, prejudice; and (2) that he fails to use his judgment, *i.e.,* he bases his refusal upon an arbitrary decision or whim rather than upon a consideration of the relevant circumstances.

When his written decision is read aright, it appears that the trial judge found and stated these things: (1) That the individual trustee has not abused his discretion or acted arbitrarily in respect to the matters mentioned in the complaints, but, on the contrary, has "acted . . . with discretion, reasonableness, and good judgment"; (2) that the conclusion reached by the individual trustee, on his disagreement with the corporate

trustee, *i.e.,* that the trustees ought not to convey one-third of the trust *corpus* to each of the plaintiffs at this time, is "the correct one . . . and is consistent with the intentions of the trustor, Moses W. Woodard"; and (3) "that it is not necessary nor best for the welfare of the plaintiffs nor either of them, nor to their best interest, nor consistent with the welfare of the family and the estate of the trustor, Moses W. Woodard, that a one-third part of the *corpus* of the . . . trust estate be . . . distributed to each of" the plaintiffs.

We are confronted at this point by the question whether these statements of the judge are ultimate facts or legal conclusions. Ultimate facts are those found in that vaguely defined area lying between evidential facts on the one side and conclusions of law on the other. *Christmas v. Cowden,* 44 N.M. 517, 105 P. 2d 484; *Scott v. Cismadi,* 80 Ohio App. 39, 74 S.E. 2d 563. In consequence, the line of demarcation between ultimate facts and legal conclusions is not easily drawn. 54 C.J., Trial, section 1151. An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts. *Rhode v. Bartholomew,* 94 Cal. App. 2d 272, 210 P. 2d 768; *Citizens Securities & Investment Co. v. Dennis,* 236 Ill. 307; *Mining Securities Co. v. Wall,* 99 Mont. 596, 45 P. 2d 302; *Christmas v. Cowden, supra; Oregon Home Builders v. Montgomery Inv. Co.,* 94 Or. 349, 184 P. 487. Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law. *Maltz v. Jackoway-Katz Cap. Co.,* 336 Mo. 1000, 82 S.E. 2d 909; *Tesch v. Industrial Commission,* 200 Wis. 616, 229 N.W. 194.

When the statements of the judge are measured by this test, it is manifest that they constitute findings of ultimate facts, *i.e.,* the final facts on which the rights of the parties are to be legally determined. They settle all the material issues of fact raised by the pleadings. In addition, they warrant the readily distinguishable conclusion of law "that the plaintiffs do not have the right to require a division of the *corpus* of the trust estate . . . as requested and demanded by them," and the judgment denying the plaintiffs the relief sought by them. These things being true, the judge complied with all the requirements of G.S. 1-185.

This brings us to the assignments of error based on the admission of testimony presented by the defendants.

On 25 May, 1950, Elizabeth G. Woodard wrote a letter to the trustees, charging, in substance, that her life had been marred and her health injured by "court battling." The plaintiffs introduced this letter in evidence at the trial to support allegations of the widow's complaint that she had been deprived of "strength, pleasure, happiness, and enjoyment . . . by being involved in trials and law suits" with persons serving as

trustees of the estate of her husband, and that a conveyance of one-third of the trust *corpus* to her was necessary to free her from "court struggles" and to restore her peace of mind. This being so, the court rightly received in evidence the judicial record showing that in 1931 the plaintiff, Elizabeth G. Woodard, unsuccessfully applied to the Superior Court of Wake County in a former action for a decree compelling the Raleigh Savings Bank & Trust Company, the then trustee, to transfer a portion of the trust *corpus* to her. The record tended to rebut the implications of the widow's charge that she had been harassed by much vexatious litigation instituted by the trustees. The exception to the admission of the judicial record would be unavailing to plaintiffs, however, even if its contents were incompetent; for virtually the same evidence was elicited by defendants without objection from plaintiffs on the cross-examination of Bessie W. Campbell, who testified at the trial. *Davis v. Davis,* 228 N.C. 48, 44 S.E. 478; *Merchant v. Lassiter,* 224 N.C. 343, 30 S.E. 2d 217.

When he decided not to exercise the discretionary power in favor of the plaintiffs, the individual trustee addressed a letter to Thomas G. Chapman, the trust officer of the corporate trustee, setting forth in detail the motives and reasons for his decision. He did not mail or deliver the letter to Chapman but retained it and identified it at the trial. The judge received the letter in evidence over the exception of the plaintiffs. He did not err in so doing. The allegations of the complaint that the individual trustee acted arbitrarily and with an improper motive when he rejected the demand of the plaintiffs put the state of mind of the individual trustee at that time directly in issue. As a consequence, the letter was competent under the rule that "where the existence of a particular mental state in a particular individual is a relevant fact, his declarations which indicate the existence or nonexistence of such state are admitted as circumstantial evidence, even though the declarant himself may be available as a witness." 31 C.J.S., Evidence, section 255. See, also, in this connection: *In re Carson's Estate,* 184 Cal. 437, 194 P. 5, 17 A.L.R. 239; Wigmore on Evidence (2d Ed.), section 1729; Stansbury: North Carolina Evidence, section 255. The letter was also admissible to corroborate the sworn testimony of the individual trustee at the trial to the same effect. *S. v. Noland,* 204 N.C. 329, 168 S.E. 412; *Insurance Co. v. Gavin,* 187 N.C. 14, 120 S.E. 820.

Chapman, the trust officer of the corporate trustee, was not a witness at the trial. The individual trustee testified that he and Chapman interviewed both of the plaintiffs relative to their demand for parts of the trust *corpus;* that he thereafter suggested to Chapman that they ought to consult Moses W. Woodard, Jr., the other beneficiary, and ascertain his opinion on the subject; and that Chapman thereupon stated that "he couldn't do it" because "it might complicate matters." The plaintiffs

took an exception to the receipt of the extrajudicial statement of Chapman, which appears to be incompetent hearsay. Nevertheless, its receipt was not prejudicial to plaintiffs on the present record. The litigation involved the conduct of the individual trustee, and not that of the corporate trustee or its trust officer. Consequently, the statement of Chapman was immaterial, and did not affect the decision of the able and experienced judge who tried the issues of fact. *Young v. Stewart,* 191 N.C. 297, 131 S.E. 735; *In re Rawlings' Will,* 170 N.C. 58, 86 S.E. 794.

It is noted, in closing, that the judgment is not to be construed to preclude the trustees from exercising the discretionary power in the future if they jointly conclude that its exercise is "necessary or best for the welfare of the *cestui que trust,* and consistent with the welfare of . . . (the) family and estate" of the testator.

For the reasons given, the judgment is

Affirmed.