An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-293

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

IN THE MATTER OF:

T.M.                                    Durham County
                                        No. 10 J 273

Appeal by respondent-mother from amended order entered 12 December 2013 by Judge William A. Marsh, III, in Durham County District Court.  Heard in the Court of Appeals 8 July 2014.

> *Assistant County Attorney Bettyna Belly Abney for appellee Durham County Department of Social Services.*
>
> *Parker Poe Adams & Bernstein LLP, by J. Caleb Thomas, for guardian ad litem.*
>
> *Hunt Law Group, P.C., by James A. Hunt, for respondent-appellant mother.*

STEELMAN, Judge.

Where mother does not challenge certain of the trial court's findings of fact, they are binding on appeal.  Where these unchallenged findings support the trial court's conclusion that a history of neglect and a probability of a repetition of

neglect exist, the trial court did not err in terminating mother's parental rights.

## I. Factual and Procedural Background

T.M. was born in October 2010. In November 2010, the Durham County Department of Social Services (DSS) obtained non-secure custody of the infant child and filed a juvenile petition alleging neglect and dependency. The petition specifically claimed that D.D. (mother) was unable to care for her daughter due to a developmental disability, bipolar and post-traumatic stress disorders, and poor impulse control, and that T.M. had been diagnosed with failure to thrive "directly related to mother failing to adequately feed the child." The district court adjudicated T.M. a dependent juvenile on 28 February 2011, finding that mother "is unable to care for the child" and that "[t]he child is failing to thrive." The court also found that mother "has poor impulse control and does not understand when she has placed [T.M.] in danger."

The district court relieved DSS of further reunification efforts on 17 January 2013. On 25 May 2013, DSS filed a motion to terminate mother's parental rights based upon neglect, lack of reasonable progress in correcting the conditions that led to T.M.'s removal from her home, and dependency under N.C. Gen.

Stat. § 7B-1111(a)(1), (2), and (6) (2013).[1] After a hearing on 7 November 2013, the court adjudicated the existence of each of the grounds for termination alleged by DSS. The court further concluded that termination of mother's parental rights was in T.M.'s best interests.

Mother appeals.

## II. Arguments

On appeal, mother challenges each of the three grounds for termination adjudicated by the district court, arguing that they are unsupported by the court's findings of fact or by the evidence. Specifically, mother contends (1) that the trial court erred in concluding that she had willfully left her child in foster care, (2) that the trial court erred in finding that T.M. was neglected and that a probability of a repetition of neglect existed, and (3) that the trial court erred in concluding that mother's parental rights should be terminated where the trial court heard no evidence as to whether mother lacked an alternative child care arrangement. We disagree.

## A. Standard of Review

In reviewing an adjudication under N.C. Gen. Stat. § 7B-

---

[1]T.M.'s father relinquished his parental rights after the petition was filed.

1109(e) (2013), this Court must determine whether the district court's findings of fact are supported by clear and convincing evidence, and whether the findings, in turn, support the court's conclusions of law. *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000). Any findings unchallenged by the appellant are deemed to be supported by the evidence and are binding. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). We review conclusions of law *de novo*. *In re J.S.L.*, 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).

In order to constitute grounds for termination of parental rights under N.C. Gen. Stat. § 7B-1111(a)(1), "[n]eglect must exist at the time of the termination hearing[.]" *In re C.W.*, 182 N.C. App. 214, 220, 641 S.E.2d 725, 729 (2007). Where a juvenile has been placed outside of the parent's home for a significant period of time, "a trial court may find that grounds for termination exist upon a showing of a 'history of neglect by the parent and the probability of a repetition of neglect.'" *In re L.O.K.*, 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (quoting *In re Shermer*, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003)).

### B. Neglect

In her second argument, mother contends that the trial court erred in finding that a history of neglect and a probability of a repetition of neglect existed. Mother contends that this finding was not supported by clear, cogent and convincing evidence. We disagree.

In making its adjudication under N.C. Gen. Stat. § 7B-1111(a)(1), the district court expressly found and concluded that mother "has neglected the child . . . and there is a probability of a repetition of neglect."[2] The court thus applied the appropriate standard required by our case law.

Our Juvenile Code defines a neglected juvenile as one who, *inter alia*, "does not receive *proper care*, supervision, or discipline from the juvenile's parent[.]" N.C. Gen. Stat. § 7B-101(15) (2013) (emphasis added). At the time DSS assumed custody of T.M. in November 2010, she was failing to thrive due to lack of proper care from mother. Mother was also alleged and found to have poor impulse control and an inability to

---

[2]Although the district court cast these statements as conclusions of law, the court's labeling of a determination as a finding or conclusion is "inconsequential." *In re R.A.H.*, 182 N.C. App. 52, 60, 641 S.E.2d 404, 409 (2007). They are perhaps best characterized as ultimate findings of fact, inasmuch as they "are the final facts required to establish the plaintiff's cause of action or the defendant's defense[.]" *Woodard v. Mordecai*, 234 N.C. 463, 470, 67 S.E.2d 639, 644 (1951).

"understand when she has placed [T.M.] in danger." Although the court adjudicated T.M. as dependent on 28 February 2011, its adjudicatory findings clearly demonstrated T.M.'s status as a neglected juvenile as defined by statute, as well as mother's responsibility for the conditions in the home. By recounting these facts in findings 6 and 7 of the termination order, the court established the history of neglect required by *In re L.O.K.*, 174 N.C. App. at 435, 621 S.E.2d at 242.

We believe the following additional findings of fact are sufficient to show a probability of repetition of neglect if T.M. was returned to mother's care:

> 5. The child has been in the custody of [DSS] since November 29, 2010. . . .
>
> . . .
>
> 9. The mother, . . . age 22 years old, has an extensive history of mental health interventions and was enrolled in B&D Behavioral Health Sciences (hereinafter "B&D") program in 2011 . . . . Dr. Amelia Davis of B&D is the mother's psychiatry and medi[c]ation manager. . . .
>
> 10. According to Dr. Davis, the mother presents with deficits in cognitive functioning with evidence of developmental delays, difficulty processing information, limited understanding and insight, and a history of poor self care skills and hygiene. . . . The mother currently has an Axis I diagnosis of Bipolar II disorder

(primarily depressive), along with an Axis II Mental Retardation, severity unspecified. . . . The mother has been provided with several opportunities to comply with multiple pharmacological treatments and has been on five (5) different medication combination protocols due to lack of compliance, side effects, and losing medications. The mother's psychiatric disposition includes lack of insight, poor judgments, lower cognition, and non-compliance with treatment plans, all of which make sustainable improvement difficult and unlikely.

11. . . . Dr. Davis reports that it is difficult to ascertain if total symptom management can be attained with medication due to the inability to ensure compliance, the lack of insight and judgments that are displayed by the mother, and her failure to comply with best practice protocols of pharmacological therapy combined with outpatient therapy.

. . .

13. The mother has a history of smoking cannabis . . . [and] admitted that the last time she smoked marijuana was a month ago.

14. To date, the mother has failed to acquire and sustain independent living skills and continues to struggle managing day to day activities. . . . The mother was recently discharged from Taco Ball after two weeks of employment. The mother is insistent at desiring reunification with her daughter but demonstrates limited insight into recommendations such as parenting classes, abstention from illicit substances, and maintaining stable housing. To date, the mother has not completed the Level 3

parenting program as recommended by Durham DSS.

15. The mother has a history of homelessness. In July 2013, the mother was terminated from the RHD Housing Program due to violating housing rules. . . .

. . .

17. [T.M.] is 3 years old. . . .

. . .

19. [Mother] has scheduled visits with [T.M.] every Monday night but has not visited her since August 5, 2013. . . . Prior to August 5, 2013, visits between the mother and the child were sporadic.

20. The bond between the child and mother, . . . has been weakened by the length of time that the child has been in foster care without daily contact with the parent and by the parent's failure to visit consistently.

Since mother does not challenge the evidentiary support for these findings, they are binding on appeal. *See Koufman*, 330 N.C. at 97, 408 S.E.2d at 731.

The evidence likewise supports the court's finding of a probability of a repetition of neglect under N.C. Gen. Stat. § 7B-1111(a)(1). In addition to providing diagnoses of Bipolar II disorder and mental retardation, Dr. Davis testified that mother's treatment team has "noted a lot of poor judgments, lack of insight, . . . some cognitive concerns, [and] non-compliance

with treatment plans within the recent couple of weeks." Mother's most recent global adaptive functioning evaluation produced a score of 38, which "means that there just needs to be some pretty consistent psychiatric interventions and without immediate psychiatric intervention, a person could potentially qualify for hospitalization." Dr. Davis described mother's compliance with treatment as inconsistent and characterized her failure to take her medication as "a pretty significant issue[.]" Mother's case plan, which included maintaining "stable housing, being able to provide self-care, [and] being able to comply with treatment[,]" proved "challenging" for her. As a result, she "ha[s]n't been able to get that far" in developing parenting skills.

Dr. Davis opined that mother was currently unable to care for a child. She explained that mother would need to display a "consistent ability to care for [her]self," and to meet her medication and "treatment targets for a period of six months to a year . . ., with the understanding that [she] would probably require some assistance." Moreover, mother's cognitive limitations are expected to persist throughout her life and have a "pretty significant" effect on her ability to take care of herself. When asked about "the likelihood that [mother]'s

ability to function would improve substantially in the foreseeable future[,]" Dr. Davis replied, "The likelihood is low." Moreover, the testimony offered by mother's DSS social workers was consistent with Dr. Davis's observations regarding her lack of compliance with mental health treatment, housing instability, and lack of capacity to parent a child.

We hold that the evidence supported the trial court's findings of fact, which in turn support the trial court's conclusions of law that T.M. was a neglected juvenile and that there was a probability that mother would repeat that neglect, as required by N.C. Gen. Stat. § 7B-1111(a)(1). Having upheld the adjudication of neglect, we need not address the additional grounds for termination found by the district court under N.C. Gen. Stat. 7B-1111(a)(2) and (6). *In re P.L.P.*, 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006). The order terminating mother's parental rights is affirmed.

AFFIRMED.

Judges McGEE and ERVIN concur.

Report per Rule 30(e).