IN THE SUPREME COURT OF NORTH CAROLINA

No. 97A25

Filed 20 March 2026

YANLI JAY

v.

GARY WAYNE JAY

Appeal pursuant to N.C.G.S. § 7A-30(2) (2023) from a divided panel of the Court of Appeals, 298 N.C. App. 50 (2025), affirming an order entered on 17 August 2023 by Judge James T. Hill in District Court, Durham County. This matter was calendared for argument in the Supreme Court on 18 September 2025 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief filed for plaintiff-appellee.*

*Matthew C. Suczynski for defendant-appellant.*

RIGGS, Justice.

It is well-established that trial courts sitting without a jury are required to make appropriately detailed findings. *See Coble v. Coble*, 300 N.C. 708, 712 (1980); N.C.G.S. § 1A-1, Rule 52(a) (2025). Meeting that requirement ensures that trial courts substantively address litigants' issues and allows for meaningful appellate review. *Coble*, 300 N.C. at 712. In this appeal from a domestic violence protective order, Gary Wayne Jay (Mr. Jay) challenges the sufficiency of the trial court's

incorporation-by-reference approach to factfinding. The Court of Appeals held that there was competent evidence to support the trial court's findings of fact and order because the trial court relied on the written statement Yanli Jay (Mrs. Jay) attached to her initial complaint and because it considered both parties' testimony at trial. *Jay v. Jay*, 298 N.C. App. 50, 55 (2025). Based on the dissent below, Mr. Jay's appeal to this Court centers on the form of the findings. The dissenting judge reasoned that the trial court failed to specifically find the necessary facts under Rule 52 because it referred to Mrs. Jay's written statement of allegations as its findings rather than explicitly documenting the facts itself. *Id.* at 63 (Carpenter, J., dissenting).

The trial court was able to assess the credibility of Mrs. Jay's written statement through hearing the parties' testimony. Therefore, we hold that the trial court's factfinding in this matter complied with Rule 52 and we affirm the Court of Appeals' judgment holding that there was competent evidence to support the trial court's findings of fact and order.

## I. Factual and Procedural Background

Mr. Jay and Mrs. Jay were married on 15 April 2016 and separated around August 2022. On 7 June 2023, Mrs. Jay filed an unverified complaint and motion for a domestic violence protective order (DVPO) against Mr. Jay in the District Court, Durham County. In a written statement accompanying her complaint, Mrs. Jay alleged various instances of sexual abuse and other allegations against Mr. Jay that had occurred in the months leading up to the filing of her complaint and motion.

On the same date Mrs. Jay filed her complaint, the trial court granted Mrs. Jay an ex parte DVPO effective until 14 June 2023. In the additional findings section of the ex parte DVPO, the judge handwrote "violent sexual contact. Repeatedly isolated [Mrs. Jay]. English not her [first] language. [Mr. Jay] has caused physical injury to [Mrs. Jay]."

After several continuances, the trial court held a hearing on 17 August 2023 to consider Mrs. Jay's motion for a one-year DVPO. Mrs. Jay testified that on 28 March 2023, she expressed her unwillingness to engage in sexual intercourse with Mr. Jay. She testified that Mr. Jay told her to take off her clothes, said he was going to have sex with her, and that, "at the time, he was very violent." Mrs. Jay testified that Mr. Jay caused her serious injury.

Mrs. Jay also testified that on 9 May 2023, Mr. Jay called her to try to have sex with her and that she refused him. Mrs. Jay stated that Mr. Jay texted her after she did not answer his call. She testified that she ultimately told him "I can't" and that Mr. Jay responded by telling her, "This is my home. I can come back whenever I can."[1] This prompted Mrs. Jay to contact her attorney and file for a protective order.

Mrs. Jay was also questioned about various allegations that she included in the written statement submitted with her complaint. Mrs. Jay's counsel asked Mrs. Jay to expand on her written allegation that Mr. Jay told her the parties "would

---

[1] Because the record reflects that the parties separated around August 2022, Mr. Jay and Mrs. Jay were not living together at the time the 9 May 2023 incident occurred.

become enemies." Mrs. Jay testified that Mr. Jay told her they "would become enemies" when she expressed that she wanted to go to court. She further testified that his words made her feel afraid. Her counsel also asked her to expand on her allegation that Mr. Jay called her "moron, stupid, idiot." Mrs. Jay testified that Mr. Jay rarely used her name and instead always called her an "idiot" and referred to her with insults including "moron, bullshit, stupid, full of baloney." Mrs. Jay also testified that she felt physically and emotionally mistreated by Mr. Jay and provided examples like having to massage Mr. Jay's back every night and that Mr. Jay often spoke to her with disrespect.

Mr. Jay also testified at the hearing. He stated that he had never sexually assaulted or physically hurt Mrs. Jay. He testified that the "[l]ast two years of the marriage were essentially nil." Mr. Jay further testified that he had wanted to resume their relationship, so he contacted Mrs. Jay in March 2023 and met with her several times that year.

After hearing from both parties, the trial court found by the greater weight of the evidence that Mrs. Jay had proven her case and therefore met the standard required to grant the DVPO. The presiding judge noted on the record that he had a copy of the written statement Mrs. Jay submitted with her complaint. He said he "marked up" and "Xed out" the facts alleged in Mrs. Jay's written statement, and that he would include the marked-up copy as additional factual findings in the DVPO.

The trial court entered the one-year DVPO, effective until 17 August 2024. In

the additional findings section of the DVPO, the trial court described Mr. Jay's conduct as follows: "Violent sexual contact. [Mr. Jay] has caused physical injury to [Mrs. Jay]. Exhibit A is attached for further findings of fact by the court." The judge handwrote "Exhibit A" across the top of a copy of Mrs. Jay's written statement, and consistent with the judge's statement on the record that he "marked up" and "Xed out" sections of the statement, several lines and whole paragraphs were struck. Based on the judge's signature at the end of the DVPO, it appears that the judge wrote his initials beside each line and paragraph he struck. The judge entered the DVPO concluding that, based on the facts, Mr. Jay committed acts of domestic violence against Mrs. Jay and there was danger of serious and immediate injury to her. Shortly after the entry of the DVPO, Mr. Jay filed a Rule 60 motion to set the DVPO aside. The trial court considered the motion on 15 September 2023 and denied it. Mr. Jay filed a notice of appeal the same day.

On appeal, Mr. Jay argued that there was insufficient evidence to support the findings of fact made by the trial court. *Jay*, 298 N.C. App. at 53. The Court of Appeals issued its opinion in a divided decision on 5 March 2025, holding that there was competent evidence to support the trial court's findings of fact supporting entry of the DVPO. *Id.* at 55.

The majority held that the trial court did not err by incorporating Mrs. Jay's written statement by reference into the DVPO's findings of fact. *Id.* at 54–55. The majority noted that the trial court was presented with documentary evidence to

support its findings and heard testimony from both sides. *Id*. at 54. Thus, the majority concluded that the findings were supported by competent evidence because the trial court "had ample opportunity to consider the credibility of both parties." *Id*. at 55. The majority therefore deferred to the trial court's credibility and factfinding conclusions. *Id*. at 55.

In dissent, Judge Carpenter argued that, by implicitly approving the trial court's incorporation of Mrs. Jay's statement into its findings of fact, the majority "incentiviz[es] behavior that violates the North Carolina Rules of Civil Procedure." *Id*. at 56 (Carpenter, J., dissenting). The dissent agreed with the majority "that the evidence, viewed in isolation, could have supported findings identifying the basis for an act of domestic violence." *Id*. Notwithstanding that acknowledgment, the dissent argued that the trial court's purported findings were insufficient under Rule 52 because the trial court adopted Mrs. Jay's written statement instead of making its own findings. *Id*. at 56–57; *see also* N.C.G.S. § 1A-1, Rule 52(a)(1) ("In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment."). While the dissent acknowledged that the trial court engaged with the written statement by striking certain sentences and paragraphs, the dissent concluded that those amendments were only evidence of a "cursory review" and "were not sufficient to demonstrate the process of logical reasoning required by Rule 52." *Id*. at 62 (Carpenter, J., dissenting).

The dissent also questioned whether it was permissible for trial courts to incorporate by reference allegations from an unverified complaint, as occurred here. *Id.* at 56, 59–61. The dissent emphasized that Mrs. Jay's written statement here was unverified, thus "lacking any guarantee of reliability and trustworthiness." *Id.* at 61. Ultimately, the dissent would have vacated the one-year DVPO and remanded for additional findings. *Id.* at 63.

Mr. Jay appealed pursuant to N.C.G.S. § 7A-30(2) based on the dissent's argument that the trial court improperly issued the DVPO because of its factfinding method. *See* N.C.G.S. § 7A-30(2) (2023). He asked this Court to examine whether the trial court improperly delegated its factfinding duty by incorporating Mrs. Jay's unverified, typed statement into the DVPO as support for its conclusion that Mr. Jay committed domestic violence.

## II. Standard of Review

Because DVPO proceedings are matters where the trial court sits without a jury, to review the issuance of a DVPO, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. *State v. Williams*, 362 N.C. 628, 632 (2008). Where there is competent evidence to support the trial court's findings of fact, those findings are binding on appeal. *Id.* Factfinding in these matters must comply with Rule 52 of the North Carolina Rules of Civil Procedure. *See, e.g., Williams v. Cabrera*, 298 N.C. App. 611, 615 (2025) ("The issuance of a one-

year DVPO [requires trial courts] to comply with Rule 52."). Interpreting the Rules of Civil Procedure is a matter of statutory interpretation and thus a question of law reviewed de novo. *See In re E.D.H.*, 381 N.C. 395, 398 (2022).

## III. Analysis

The Court of Appeals held that competent evidence supported the trial court's findings, *Jay*, 298 N.C. App. at 55, and the dissent conceded that competent evidence was presented that "could have supported findings identifying the basis for an act of domestic violence," *id.* at 56 (Carpenter, J., dissenting). Thus, the issue at the heart of this matter is simply the proper form of the trial court's findings—whether the trial court's findings in the DVPO were sufficient under Rule 52 of the North Carolina Rules of Civil Procedure.

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C.G.S. § 1A-1, Rule 52(a) (2025). The purpose of Rule 52 is to ensure that the findings of specific facts are sufficient to allow a reviewing court to determine whether the judgment, and the underlying legal conclusions, reflect the appropriate application of law. *See Coble*, 300 N.C. at 714 ("Evidence must support findings; findings must support conclusions; conclusions must support the judgment.").

> [W]hile Rule 52(a) does not require a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts, it does require *specific findings* of the ultimate facts established by the evidence, admissions and

> stipulations which are determinative of the questions
> involved in the action and essential to support the
> conclusions of law reached.

*Quick v. Quick*, 305 N.C. 446, 452 (1982). Ultimate facts "establish the plaintiff's cause of action or the defendant's defense" and are the middle ground between evidentiary facts and conclusions of law. *Woodard v. Mordecai*, 234 N.C. 463, 470, 472 (1951).

This Court has stated that trial courts may, as a general matter, incorporate documents and recitations in their orders, subject to certain constraints. *Compare In re H.B.*, 384 N.C. 484, 486 (2023) (holding that the incorporation of a party's exhibit into a termination of parental rights order was proper factfinding where the trial court also found that the exhibit was "credible and reliable"), *with In re A.E.*, 379 N.C. 177, 185 (2021) (holding that the trial court's incorporation of "mere recitations of testimony" as findings in its termination order was improper factfinding where there were no indications that the trial court had evaluated the credibility of the testimony).

Although other statutes govern factfinding requirements for juvenile court proceedings such as *In re H.B.*, our doctrine in that area illuminates what qualifies as sufficient factfinding under Rule 52.[2] In *In re K.R.C.*, this Court stated that if

---

[2] Juvenile court proceedings governed by Chapter 7B of the General Statues of North Carolina often involve the application of Rule 52:

> The Juvenile Code provides that adjudication orders "shall
> contain appropriate findings of fact and conclusions of law."

evidentiary findings "are untethered to any ultimate facts which undergird an adjudication pursuant to [the relevant statute] or to any particularized conclusions of law which would otherwise explain the trial court's reasoning[,]" then meaningful appellate review cannot occur. *In re K.R.C.*, 374 N.C. 849, 861 (2020). We have also stated that "the trial court may not rely solely on prior court orders and reports but must receive some oral testimony at the hearing and make an independent determination regarding the evidence presented." *In re T.N.H.*, 372 N.C. 403, 410 (2019). Finally, we have stated that a "mere recitation" by a trial court is not a proper evidentiary finding standing alone but may be transformed into a proper evidentiary finding when a trial court makes a credibility determination about the recited evidence. *In re H.B.*, 384 N.C. at 490.

Mr. Jay argues that the issuance of the DVPO was improper due to the trial court's method of factfinding in this matter. He claims that the trial court's findings

---

N.C. Gen. Stat. § 7B-807(b). Rule 52 of our rules of civil procedure mandates the trial court make findings of "facts specially and state separately its conclusions of law thereon. . . ." N.C. Gen. Stat. § 1A-1, Rule 52. "[T]he trial court's factual findings must be more than a recitation of allegations. They must be the specific ultimate facts . . . sufficient for the appellate court to determine that the judgment is adequately supported by competent evidence." *In re Anderson*, 151 N.C. App. 94, 97 (2002).

*In re H.P.*, 278 N.C. App. 195, 202 (2021); *see also In re K.R.C.*, 374 N.C. 849, 856 (2020) ("We have previously held that N.C.G.S. § 7B-1109(e) 'places a duty on the trial court as the adjudicator of the evidence' which is equivalent to the duty imposed by Rule 52(a)(1) of the North Carolina Rules of Civil Procedure." (footnote omitted) (quoting *In re T.N.H.*, 372 N.C. 403, 407 (2019))).

should not be considered findings at all, given the trial court's reliance on the written statement of allegations Mrs. Jay filed with her unverified complaint. We disagree. Because the record reflects that the trial court considered Mrs. Jay's written statement in conjunction with her testimony from the DVPO hearing to evaluate the statement's credibility and meaningfully altered the statement to reflect the trial court's thinking, the trial court's findings and its issuance of the DVPO were not improper. We hold that the trial court sufficiently engaged with the factfinding process and did not violate Rule 52.

Although the trial court's explicit written findings are not long or extraordinarily detailed, they are material to the resolution of the dispute and therefore are ultimate facts essential to support the trial court's conclusions of law. After hearing testimony from both parties, the trial court made the ultimate findings of fact required by Rule 52(a): "Violent sexual contact. [Mr. Jay] has caused physical injury to [Mrs. Jay]. Exhibit A is attached as further findings of fact by the court." As indicated in the DVPO, the trial court concluded that "[t]he defendant has committed acts of domestic violence against the plaintiff" and "[t]here is danger of serious and immediate injury to the plaintiff." Thus, as a preliminary matter, the trial court did find ultimate facts that support its conclusions of law in issuing the DVPO.

The trial court's incorporation-by-reference approach of including Mrs. Jay's written statement as additional findings of fact, with the judge's alterations to that statement, did not violate Rule 52. The trial court did not indiscriminately credit

Mrs. Jay's unverified written statement. Rather, the trial court judge struck through specific lines and whole paragraphs in Mrs. Jay's statement while adopting others as findings. Furthermore, he signed off on each amendment by initialing beside each portion struck. The trial court did not "rely solely" on Mrs. Jay's written statement, nor did the Court disregard our instructions to avoid "mere recitations." *See In re T.N.H.*, 372 N.C. at 410; *In re H.B.*, 384 N.C. at 490. Instead, Mrs. Jay's sworn testimony at the one-year DVPO hearing bolstered her unverified allegations in her written statement and contributed to the trial court's opportunity to assess credibility.

For example, in her written statement, Mrs. Jay detailed incidents that occurred on 28 March 2023 and 9 May 2023, and Mrs. Jay provided testimony regarding both of those incidents at the DVPO hearing. Mrs. Jay also alleged in her statement that Mr. Jay would say various insults to her, and she testified similarly at the DVPO hearing. In the factual findings, those sections were not struck from her statement by the trial court judge.

In sum, in comparing the testimony at the hearing to the trial court judge's marked-up copy of Mrs. Jay's written statement, the trial court judge struck portions of her written statement that were not corroborated by the parties' testimonies and left intact the portions that were corroborated. We acknowledge that the trial court judge did not expressly state in the DVPO whether he found Mrs. Jay's written statement credible. Even so, we are satisfied based on how the testimony and the

marked-up copy match up that there are adequate assurances here that the trial court assessed the credibility of Mrs. Jay's written allegations. The trial court judge thus sufficiently engaged with the written statement and transformed what would otherwise be improper "mere recitations" into proper evidentiary findings under Rule 52. *See In re H.B.*, 384 N.C. at 490.[3]

Mr. Jay challenged the sufficiency of the trial court's factfinding and did not argue on appeal to this Court that the findings were unsupported by competent evidence. Because we hold that the trial court's findings were sufficient in form and find no merit in Mr. Jay's arguments, the trial court's findings are binding on this Court and support the trial court's issuance of the one-year DVPO.

## IV. Conclusion

In sum, we affirm the Court of Appeals' judgment affirming the trial court's order issuing the DVPO in this matter and conclude that the trial court did not improperly delegate its factfinding obligations in violation of Rule 52.

AFFIRMED.

---

[3] We reiterate the caution we expressed previously in a similar matter where we determined that the trial court's incorporation by reference of a party's exhibit was proper because the trial court indicated it made credibility determinations:

> We stress that our holding today is not an endorsement of this sort of fact finding. . . . [T]he better practice always will be to make specific, express findings in the written order about what the trial court determined the facts to be, rather than referencing evidence in record and stating that the referenced evidence is credible.

*In re H.B.*, 384 N.C. 484, 490–91 (2023).