WISCONSIN MEMORIAL PARK COM-
PANY, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 12176.

United States Court of Appeals
Seventh Circuit.

May 16, 1958.

William J. Willis, Joseph E. Rapkin, Milwaukee, Wis., for petitioner. Fairchild, Foley & Sammond, Milwaukee, Wis., of counsel.

Charles K. Rice, Asst. Atty. Gen., Gilbert E. Andrews, Jr., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before FINNEGAN and SCHNACKENBERG, Circuit Judges, and WHAM, District Judge.

FINNEGAN, Circuit Judge.

Wisconsin Memorial Park Company, corporate-appellant-taxpayer seeks reversal of a Tax Court decision, 1957, 28 T.C. 390, adverse to it, involving deficiencies in income taxes, declared value excess profits taxes and excess profits

taxes for the fiscal years 1944–1947. Shortly stated, a judge of the Tax Court determined that taxpayer was not entitled to deductions for accrued but unpaid interest on its indebtedness to Kurtis R. Froedtert because, as the judge viewed the evidence, 50% or more of taxpayer's outstanding capital stock was owned directly or indirectly by or for Froedtert within the meaning of § 24(b) (1) (B), I.R.C.1939, 26 U.S.C.A. § 24(b) (1) (B); the amounts of accrued but unpaid interest on taxpayer's indebtedness to Froedtert were correctly disallowed by the Commissioner as deductions under § 23(b) for fiscal years ended May 31, 1944 to May 31, 1947; consequently taxpayer was not entitled to the benefit of a net operating loss carry over based on such deductions.

The record now before us contains parol and documentary evidence. Urging us to exercise our own judgment as to the "proper conclusions" to be reached from the evidence, taxpayer in its reply brief also tells us, and thus concedes, that: "In the present case there is no controversy as to the evidentiary facts. The determination of the Tax Court which is now relied upon by the Respondent is a conclusion drawn by the Tax Court from uncontradicted evidentiary facts, the drawing of which did not involve any element of observing witnesses or judging their credibility, and is not binding on this Court."

Through legislative grace interest on indebtedness was deductible under § 23 (b), I.R.C.1939, 26 U.S.C.A. § 23(b). But deductibility was disallowed through a coupling of § 24(c) (3) with § 24(b) (1) (B), of the 1939 Code, providing in relevant part against such deductions: "Except in the case of distributions in liquidation, between an individual and a corporation more that 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual * * *" Taxpayer repudiates any interpretation of the evidence manifesting that statutory relationship with Froedtert, and the Commissioner, equally confident, insists on the contrary.

## I.

Congress insulated taxpayers against Tax Court decisions which are arbitrary, capricious or purely legislative in character, by mandating in Code § 7459(b), 26 U.S.C.A. § 7459(b): "It shall be the duty of the Tax Court and of each division to include in its report upon any proceeding its findings of fact or opinion or memorandum opinion. The Tax Court shall report in writing all its findings of facts, opinions, and memorandum opinions." 68A Stat. 886. Thus the Tax Court is required to do more than pronounce a conclusion since it must lay bare for judicial review—as well as for the parties—the basis of its decision. We, on the other hand, can then examine the factual explanation given by the Tax Court for its ultimate conclusion reached by relating its analysis of the evidence to the statutory standard prescribed by the Code. Frequently the ultimate issue is resolved as the result of drawing inferences from the evidence received during the trial. Trust in inference is simply the belief that if there is a firm basis for the starting point the derived judgment is acceptable. The difference between speculation and inference lies in the substantiality of the evidence constituting the premise. Inductive reasoning claims the premises constitute some evidence for the conclusions and in law we speak in terms of the probability and likelihood that the premises buttress the conclusions. Few reviewing courts report their endeavors to form conceptions of substantial evidence under Rule 52. When an adjudication of fact coupled with an opinion comes before our court on petition for review of a Tax Court opinion there are several benchmarks staking out the perimeter of approach to it.

Evaluating credibility of witnesses, fact finding and drawing inferences are prime functions of the Tax Court[1]

1. I.R.C.1954, § 6214, 68A Stat. 773, 26 U.S.C.A. § 6214.

in reaching decisions during proceedings testing the Commissioner's[2] application of Internal Revenue Code provisions to particular transactions and activities of specific taxpayers. At that reviewing stage a case is usually heard and determined by a "division," consisting of one[3] judge, who, after the hearings, prepares "a report of any such determination which constitutes its (the division's) final disposition * * *" That statutory "report,"[4] resting upon parol and documentary evidence heard and taken by a single judge, containing findings of fact and supporting opinion becomes the report of the Tax Court within thirty days thereafter, unless during that period the chief judge of the Tax Court directs review of it by the Court.[5] More frequently these single judge "reports"— one judge among sixteen[6] members—become the findings of fact and opinion of the Tax Court. Courts of Appeal have exclusive jurisdiction to review[7] decisions of the Tax Court "in the same manner and to the extent as decisions of the district courts in civil actions tried without a jury,"[8] and upon such review Courts of Appeal "have power to affirm or, if the decision of the Tax Court is not in accordance with the law, to modify or to reverse the decision of the Tax Court, with or without remanding the case for a rehearing, as justice may re-require. "[9]

██ The jurisdictional provision in § 7482(a) of the Code is geared to Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A., consequently when a petition for review of a decision of the Tax Court comes before us we are bound to observe this effect of findings: "In all actions tried upon the facts without a jury * * * the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment * * *. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The applicability of Rule 52 to Tax Court decisions was the Congressional response in 1948, following in the wake of Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, and current review by Courts of Appeal has some pre-Dobson flavor. The Commissioner's "ruling has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong."[10] In its Rule 32, 26 U.S. C.A. (I.R.C.1954) § 7453, the Tax Court provides: "The burden of proof shall be upon the petitioner, except as otherwise provided by statute, and except that in respect of any new matter pleaded in his answer, it shall be upon the respondent."

Under Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. regard must be had for demeanor evidence depending, of course, upon the significance of credibility in each case.[11] "When there is substantial evidence to support the conclusions of the Tax Court they must be accepted * * *. Substantial evidence

2. I.R.C.1954, §§ 6201–6204, 6211 et seq. 68A Stat. 767–772, 26 U.S.C.A. §§ 6201–6204, 6211 et seq.

3. I.R.C.1954, § 7444, 68A Stat. 880, 26 U.S.C.A. § 7444. " * * * (c) Divisions.—The chief judge may from time to time divide the Tax Court into divisions of one or more judges, assign the judges of the Tax Court thereto * * *" Ibid.

4. I.R.C.1954, § 7460, 68A Stat. 887, 26 U.S.C.A. § 7460.

5. I.R.C.1954, § 7460(b), 68A Stat. 887.

6. I.R.C.1954, § 7443(a), 68A Stat. 879, 26 U.S.C.A. § 7443(a).

7. Except as provided in 28 U.S.C.A. § 1254.

8. I.R.C.1954, § 7482(a), 68A Stat. 890, 26 U.S.C.A. § 7482(a).

9. I.R.C.1954, § 7482(c) (1), 68A Stat. 890.

10. Welch v. Helvering, 1933, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212; Commissioner of Internal Revenue v. Heininger, 1943, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171.

11. See United States v. United States Gypsum Co., 1948, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, and the discussion of that opinion in Orvis v. Higgins, 2 Cir., 1950, 180 F.2d 537.

has been held to mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [12] Assuming the presence of such a quantum and quality of evidence then it is the Tax Court's province and function to draw inferences from it. " * * [W]here the inference has a rational basis, in the sense that there are circumstances of logical probative force to support it, in relation to and on a consideration of the evidence as a whole, there is no right on [the] part [of a Court of Appeals] to touch such determination as the Tax Court may have made. All of the probative evidence—circumstances as well as direct testimony—necessarily is open to and should be considered by the Tax Court in resolving the factual probabilities of the situation * * * " [13]

■ "Clearly erroneous," in the setting of Rule 52, was described by Mr. Justice Reed during his opinion for the Court in United States v. U. S. Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746: "Since judicial review of findings of trial courts does not have the statutory or constitutional limitations of findings by administrative agencies or by a jury, this Court may reverse findings of fact by a trial court where 'clearly erroneous.' * * * A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Later, speaking for the majority of the Court deciding United States v. E. I. DuPont & Co., 1956, 351 U.S. 377, 381, 76 S.Ct. 994, 999, 100 L.Ed. 1264, Mr. Justice Reed again speaking of Rule 52 added this alternative requirement for an appellant to show "erroneous legal tests were applied to essential findings of fact or that the findings themselves were 'clearly erroneous' * * * ". On the other hand we point out that Courts of Appeal are inhibited from trying issues of fact or substituting their judgment for that of the Tax Court. We simply do not try the facts de novo. [14]

Our late colleague, Judge Lindley, put together some aspects of our reviewing functions in Tax Court cases when writing the opinion reported as Pleason v. Commissioner of Internal Revenue, 7 Cir., 1955, 226 F.2d 732, 733: "Inasmuch as it is the function of the trial court to weigh the evidence, draw inferences and declare the result [citing] our only function is to determine whether the findings are clearly erroneous, that is whether upon the whole record, there is substantial evidence to support them and whether the court erred as to the law." Earlier, Mr. Justice Murphy speaking for a unanimous court in Commissioner of Internal Revenue v. Scottish American Co., 1944, 323 U.S. 119, 124, 65 S.Ct. 169, 171, 89 L.Ed. 113 had cautioned: " * * [W]hen the Tax Court's factual inferences and conclusions are determinative of compliance with statutory requirements, the appellate courts are limited to a determination of whether they have any substantial basis in the evidence." See also Wilmington Trust Co. v. Helvering,

12. Benoit v. Commissioner, 1 Cir., 1956, 238 F.2d 485, 491.

13. Heil Beauty Supplies, Inc., v. Commissioner, 8 Cir., 1952, 199 F.2d 193, 195.

14. For example "Petitioners contend that as all of the facts are stipulated this court should reach its own conclusions without regard to the findings and conclusions of the Tax Court. We cannot agree * * * It is true that where the facts are not in dispute this court may draw inferences of its own. But the ultimate question is whether the findings are supported by the record." Rolling-wood Corp. v. C. I. R., 9 Cir., 1951, 190 F.2d 263, 265.

"On an issue that is essentially factual, the scope of * * * review is limited to determining whether there is substantial evidence to support the findings of the Tax Court * * * (citing) and whether the law was correctly applied." Smoot Sand & Gravel Corp. v. Commissioner, 4 Cir., 1957, 241 F.2d 197, 200.

" * * * [W]here * * * the evidence consisted of stipulated facts * * * [Court of Appeals] is entitled to draw its own inferences of ultimate fact from the record." Kraft Foods Co. v. C. I. R., 2 Cir., 1956, 232 F.2d 118, 122.

1942, 316 U.S. 164, 62 S.Ct. 984, 86 L.Ed. 1352; Helvering v. Kehoe, 1940, 309 U.S. 277, 60 S.Ct. 549, 84 L.Ed. 751; Helvering v. F. & R. Lazarus & Co., 1939, 308 U.S. 252, 60 S.Ct. 209, 84 L.Ed. 226.

■ Questions of law and the familiar phrase "substantial evidence" are unmentioned in Rule 52. In Miller v. Commissioner, 6 Cir., 1953, 203 F.2d 350, 353 the court spoke in terms of Consolidated Edison Co. of New York v. N. L. R. B., 1938, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 when discussing substantial evidence, during review of a Tax Court case, saying: " * * * substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated from which that quote comes was decided before Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 and Camera was generated by statutory provisions found in the Taft-Hartley Act (29 U.S.C.A. § 141 et seq.) and the Administrative Procedure Act (5 U.S.C.A. § 1001 et seq.). Without opening up a discussion of the Tax Court's status—the agency or court dilemma [15] —we observe that the second quoted sentence from the Consolidated opinion frequently appears in Courts of Appeals' opinions where Tax Court decisions are under scrutiny and this is understandable since Rule 52 omits the talismantic phrase "substantial evidence." Indeed there are a multitude of cases in which it is held that, under Rule 52 trial court findings of fact supported by substantial evidence are conclusive on appeal. We think this another way of saying that a finding is not clearly erroneous if there is substantial evidence supporting it. Mischievous results would follow if we attempted imprisoning the concept of substantial evidence within a short phrase. Judges evaluate evidence [16] but do not define it. This is distinguishable from explaining the meaning of the term "substantial evidence" as in the passages quoted from cases already mentioned.

A short passage from a state court opinion, Woodard v. Mordecai, 1951, 234 N.C. 463, 67 S.E.2d 639, 644 serves for rounding off one phase of our discussion:

"There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts * * * (citing).

" * * * Ultimate facts are those found in that vaguely defined area lying between evidential facts on the

---

15. "The Board of Tax Appeals shall be continued as an independent agency in the Executive Branch of the Government, and shall be known as the Tax Court of the United States. The members thereof shall be known as the chief judge and the judges of the Tax Court." I.R.C.1954, § 7441, 68A Stat. 879, 26 U.S.C.A. § 7441.

16. "The question of intent, if at all doubtful either because of a conflict in the evidence or because different inferences reasonably may be drawn from undisputed facts, is a question of fact for the trial court, and only becomes a question of law for a reviewing court if the evidence is all one way or so overwhelmingly one way as to have no doubt as to the fact * * * (citing)" Crown Iron Works v. C. I. R., 8 Cir., 1957, 245 F.2d 357, 360. See also Boehm v. C. I. R., 1945, 326 U.S. 287, 293, 66 S.Ct. 120, 90 L. Ed. 78.

"Where the ultimate finding is a conclusion of law or a determination of a mixed question of law and fact, we may substitute our judgment for that of the trial court." Fritz v. Jarecki, 7 Cir., 1951, 189 F.2d 445, 448. See also: Chandler v. United States, 7 Cir., 1955, 226 F.2d 403, and Exmoor Country Club v. United States, 7 Cir., 1941, 119 F.2d 961.

See also: Rice, Law, Fact and Taxes: Review of the Tax Court Decisions under Section 1141 of the Internal Revenue Code, 51 Col.L.Rev. 439 (1951), Dobson v. Commissioner, The Strange Ways of Law and Fact, 57 Harv.L.Rev. 753 (1944).

one side and conclusions of law on the other * * * (citing). An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts * * * (cases collected). Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law. * * "

Code § 7482(a) is the decisive force separating a Tax Court Judge's decision from the category of final orders by administrative agencies and from jury verdicts, leaving such a judge, from our reviewing standpoint, in the status of any federal trial judge. The significance of such a resultant classification, under Rule 52 can be appreciated on reading an incisive explanation written by Judge Frank regarding the Rule during his opinion for a majority of the division in Orvis v. Higgins, 2 Cir., 1950, 180 F.2d 537, 539:

"We must sustain a general or a special jury verdict when there is some evidence which the jury might have believed, and when a reasonable inference from that evidence will support the verdict, regardless of whether that evidence is oral or by deposition. In the case of findings by an administrative agency, the usual rule is substantially the same as that in the case of a jury, the findings being treated like a special verdict. Where a trial judge sits without a jury, the rule varies with the character of the evidence: (a) If he decided a fact issue on written evidence alone, we are as able as he to determine credibility, and so we may disregard his finding. (b) Where the evidence is partly oral and the balance is written or deals with undisputed facts, then we may ignore the trial judge's finding and substitute our own, (1) if the writ-

ten evidence or some undisputed fact renders the credibility of the oral testimony extremely doubtful, or (2) if the trial judge's finding must rest exclusively on the written evidence or the undisputed facts, so that his evaluation of credibility has no significance. (c) But where the evidence supporting his finding as to any fact issue is entirely oral testimony, we may disturb that finding only in the most unusual circumstances."

## II.

The cited Tax Court findings of fact and opinion make unnecessary anything more than a terse summary of several facts found by the judge of that Court. We are omitting lengthy excerpts from several salient documents [17] which, while they are relevant and operative in this case, can be read in 28 T.C. 30. Despite our economical statement of facts, it must be remembered our disposition of this appeal rests upon carefully canvassing the whole record.

This accrual basis taxpayer was organized under the laws of Wisconsin on May 2, 1929 with authorized capital of 25,000 shares of common stock, par value $1 per share, and 15,000 shares of preferred stock, par value $1 per share. It has been engaged in the business of operating a cemetery known as "Wisconsin Memorial Park," located near Milwaukee, Wisconsin.

At the time of its organization, taxpayer issued to Froedtert 15,000 shares of preferred stock and 24,998 shares of common stock in exchange for a 100-acre tract of land. Of the preferred stock issued to Froedtert, 14,950 shares were transferred in small amounts as bonuses to purchasers of cemetery lots. By December 8, 1934, 210 shares of preferred stock had been reacquired by him. By April 19, 1938, 20,001 shares of common stock were owned by Froedtert.

---

17. For example: Voting Trust Agreement, Mortgage, Transfer Agreement, Extension Agreement, Consent and Extension Agreement, Assignment, Deposition and Affidavit. There is also a stipulation of some facts.

At some time during 1930, Froedtert had guaranteed a note or notes of taxpayer to the First Wisconsin National Bank of Milwaukee, evidencing a loan to taxpayer from the bank in the amount of $250,000.00. On April 19, 1933, as security for this guaranty, Froedtert transferred his 20,001 shares of taxpayer's common stock to himself, Henry S. Wright and E. P. Ormsby, as voting trustees, (under an agreement received in evidence) subject to a previous pledge of such shares to the bank.

No transfer of stock to the voting trustees was recorded, however, on the stock transfer books of taxpayer. On June 21, 1934, Froedtert, having been pressed by the bank on his guaranty of taxpayer's indebtedness, purchased the bank's claim, which then amounted to $249,866.75, including interest, simultaneously receiving an assignment of all collateral which had been pledged to the bank. Taking into account the acquisition of the bank's claim and other loans and advances made to taxpayer, Froedtert's total claim against taxpayer was approximately $400,000.

By a written agreement dated December 8, 1934 (another exhibit of record here) Froedtert cancelled all of taxpayer's indebtedness to him in excess of $200,606.44, and, on behalf of taxpayer, delivered all of the shares of common and preferred stock shown on taxpayer's books as issued to him to Henry S. Wright, trustee, as security for the above-described $200,606.44 indebtedness of taxpayer to him. The agreement recited that Froedtert had "quit-claimed and assigned" all of his right, title and interest in the stock to taxpayer. The other parties to the agreement had been co-guarantors with Froedtert of taxpayer's indebtedness to the First Wisconsin National Bank. They were made parties in order that the collateral which they had furnished the bank might continue as additional security for taxpayer's obligations to Froedtert.

Froedtert, in his federal income tax return for the year 1934, claimed and was allowed deductions for the cancelled indebtedness and for the 20,001 shares of common stock which he had assigned to the trust on behalf of taxpayer.

Taxpayer, for the purpose of securing the balance of its indebtedness to Froedtert and to other creditors, executed concurrently with the December 8, 1934, agreement, a mortgage or trust indenture introduced in evidence, of some of its real estate to Henry S. Wright, trustee.

During the taxable years involved, the only stock of taxpayer registered in Froedtert's name was one share of preferred stock. On December 8, 1934, a certificate issued to Froedtert for 20,001 shares of common stock was cancelled and a new certificate issued in the name of "Henry S. Wright, Trustee." That certificate was cancelled on August 13, 1940, and a new certificate issued to Howard T. Ott, trustee. The stock record books of taxpayer indicate that about 260 preferred shares held by Froedtert were transferred to Henry S. Wright, trustee, on December 8, 1934, and then to Howard T. Ott, trustee, on August 13, 1940.

Taxpayer's indebtedness to Froedtert was originally due in full on January 2, 1938, but the maturity date of the principal amount was extended from time to time through the taxable years involved. Taxpayer was in default, however, in the taxable years, in respect to the payment of interest.

When Henry S. Wright resigned on August 13, 1940, as trustee under the December 8, 1934, agreement, Howard T. Ott was appointed successor trustee in an agreement which stated in pertinent part: "Kurtis F. Froedtert to be entitled henceforth to all rights to vote all or any part of said stock standing in the name of said Henry S. Wright as trustee."

On that day, Henry S. Wright executed a document which transferred to Ott as successor trustee the securities which had been pledged by others, not including Froedtert. The agreement also purported to assign to Ott 20,001 shares of tax-

payer's common stock and 260 shares of its preferred stock. At all meetings of taxpayer's stockholders during the taxable years involved, Ott voted 20,001 shares of common stock and 259 shares of preferred stock.

On December 19, 1936, Henry S. Wright, the first trustee, had written to Froedtert concerning the payments to be made to him by taxpayer, stating as follows:

"I wish to call your attention to the fact that all of the 80 per cent payments made to you in accordance with that certain trust indenture dated December 8, 1934, by and between the Wisconsin Memorial Park Company, myself and general creditors of the Park, has been applied against the principal amount of your claim against the Wisconsin Memorial Park Company, and accrued interest has been held in abeyance. This method I will continue to follow unless a change is arrived at at some later date by mutual agreement between Wisconsin Memorial Park Company and the general creditors and myself as trustee."

During the taxable years involved in this case all payments made by taxpayer to Froedtert were credited entirely to principal. Taxpayer, which kept its books and filed its federal income tax returns on the accrual basis, claimed deductions for interest on its indebtedness, although none of the interest was paid. The Commissioner of Internal Revenue disallowed the deductions for accrued but unpaid interest allocable to Froedtert, who had filed his income tax returns on the cash basis and who had not included in gross income the above-described interest. For the years involved in this case, which are fiscal years ending May 31, the amount of interest deduction dis-

allowed for each year was as follows: 1941—$9,711.50; 1942—$9,484.58; 1943—$9,134.45; 1944—$8,689.73; 1945—$8,133.62; 1946—$7,706.06; 1947—$7,343.74.

Neither Froedtert's accountant, nor taxpayer's secretary-treasurer or the trustee under the December 8, 1934, agreement were aware of any understanding, intention or agreement that the shares of stock held by the trustee would be returned to Froedtert or to his estate.

Froedtert died on December 6, 1951. The executors of his estate did not list in the inventory of his real and personal property any assets relating to taxpayer except the value of Froedtert's interest in the mortgage, certain cemetery lots and one share of preferred stock.

Taxpayer simply overlooks the word "indirectly" firmly embedded in the Code section governing this situation yet that word is an index of the scope of the section. We think the judge of the Tax Court correctly resolved the disputed deductibility of the interest question, and are satisfied that his rulings and findings reached, as a result of hearing adversary proceedings, should be approved. Our view of this whole record would bring us to the same result even without the benefit of his reasoning and interpretation of the evidence. The criteria we mentioned in Part I precludes reversal of the decision under review.

Judgment affirmed.

SCHNACKENBERG, Circuit Judge (concurring).

I do not unqualifiedly approve the matter quoted in the foregoing opinion from Judge Frank's explanation in Orvis v. Higgins, 2 Cir., 180 F.2d 537, 539. However, I otherwise approve of and concur in Judge FINNEGAN'S opinion.