**Robert F. ZEDDIES, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE Respondent.**

**No. 12433.**

United States Court of Appeals Seventh Circuit.

Feb. 20, 1959.

Rehearing Denied March 30, 1959.

G. Kent Yowell, John J. Yowell, Chicago, Ill., for petitioner.

Charles K. Rice, Asst. Atty. Gen., James P. Turner, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY, Chief Judge, and MAJOR and HASTINGS, Circuit Judges.

HASTINGS, Circuit Judge.

Petitioner, Robert F. Zeddies (taxpayer), sought, in this action, to set aside deficiencies in federal income tax and fraud penalties determined by respondent, Commissioner of Internal Revenue (Commissioner), for the tax years 1942 through 1947, as follows:

| Year | Deficiency | Addition to Tax § 293(b)[1] | |
|------|-----------|------------|---|
| 1942 | $ 1,358.65 | 674.33 | |
| 1943 | 7,120.66 | 4,537.48 | |
| 1944 | 13,696.59 | 7,798.77 | |
| 1945 | 71,006.44 | 35,724.67 | |
| 1946 | 137,212.93 | 68,606.47 | |
| 1947 | 41,301.98 | 20,650.99 | |
| Total | $271,697.25 | $137,992.71 | $409,689.96 |

At the hearing before the Tax Court of the United States, it was conceded by the Commissioner that the deficiencies for 1942 and 1943 were not due to fraud and

---

1. 26 U.S.C.A. § 293(b) (1939 I.R.C.). Additions for fraud.

that such assessments were accordingly barred by the statute of limitations. As to the other years the Tax Court made specific findings based upon the evidence submitted at the trial and redetermined the deficiencies and penalties as follows:

| Year | Deficiency | Addition to Tax § 293(b) | |
|------|-----------|--------------------------|---|
| 1944 .........| $ 10,762.41 | $ 6,331.68 | |
| 1945 .........| 50,983.70 | 25,713.30 | |
| 1946 .........| 99,982.40 | 49,991.20 | |
| 1947 .........| 32,679.83 | 16,339.92 | |
| Total ......| $194,408.34 | $98,376.10 | $292,784.44 |

The Tax Court found that at least part of the deficiency for each of the taxable years, 1944 through 1947, was due to fraud with intent to evade payment of tax. Taxpayer's motion for reconsideration was denied and this petition for review followed. Taxpayer contends that the determination of the deficiencies and the findings of fraud are not supported by substantial evidence and are clearly erroneous and that the decision is contrary to law. Since the findings of fact resulting in the Tax Court's determination of the deficiencies and fraud penalties are under direct attack, we shall first summarize them as follows:

## Taxpayer's Business

For many years taxpayer was a food broker and salesman in the Chicago area. Most of the time he represented a number of candy manufacturers who sold their products to retail grocery stores, paying his own expenses and receiving commissions for his services. This representation of candy manufacturers continued throughout the taxable period.

During World War II, candy and the ingredients used to manufacture it, primarily sugar and corn syrup, were in short supply. The Office of Price Administration placed ceiling prices on the sale of candy, and sugar and corn syrup were rationed. The maximum ceiling on candy sold by manufacturers was based on the manufacturer's pre-war price. Retailer's ceiling prices were based on the cost of the candy to the retailer plus a certain percentage of mark-up over cost. Because of these restrictions, some manufacturers of candy established quotas for their customers under which they sold candy to former customers on a percentage of purchases made before the war.

By 1942, Kroger Grocery & Baking Company (Kroger), a retail grocery chain, was one of taxpayer's customers. Kroger had formerly manufactured its own candy for sale in its stores, but the rationing of sugar sharply curtailed this activity; and it was unable to adequately supply its stores. Because it had done little business with candy manufacturers before the war, Kroger had few sources of supply. Kroger employed taxpayer to procure candy for its stores, paying him a commission of five percent on all candy he purchased for them. Kroger furnished him a desk and stenographer in its Chicago office. Otherwise, taxpayer bore his own expenses in procuring candy.

After discussing his sources of supply with Kroger, taxpayer then bought the candy and arranged to have it sold to Kroger in retail units. The price to Kroger included packaging costs and a profit to the packaging company. When taxpayer bought in bulk lots he frequently sold it to East India Nut Company (East India), a packaging concern, which would then pack it in retail units, resell it to Kroger, and pay taxpayer a five percent commission on such sales.

## Commissions

The Tax Court's findings with respect to commissions received by taxpayer during the taxable period were as follows:

| Year | Commissions Received | Commissions Reported | Commissions Unreported |
|------|------|------|------|
| 1944 | $41,061.17 | $40,422.70 | $ 638.47 |
| 1945 | 45,856.36 | 43,792.08 | 2,064.28 |
| 1946 | 79,811.97 | 57,161.89 | 22,650.08 |
| 1947 | 48,431.44 | 38,960.22 | 9,471.22 |

Included in the above were commissions from East India of $331.80 in 1944; $1,196.25 in 1945; $10,393.01 in 1946; and $323.23 in 1947. A part of the commissions received in 1946 was the sum of $5,479.82 which had been billed to East India by taxpayer on invoices of Zerna Products Company as sales of chocolate peanuts.

Taxpayer also did business with Kroger through Carol Lynn Products Company (Carol Lynn), a candy packaging partnership in which he owned a one-half interest. Carol Lynn received candy obtained by taxpayer, packaged it, sold it and paid taxpayer commissions of $17,591.76 in 1946 and $9,167.51 in 1947, which are included in the foregoing summary.

Petitioner did not report the commissions received from East India and Carol Lynn on his tax returns, and neither East India nor Carol Lynn reported them by filing Form 1099 with the Commissioner.

### Profits from Sales

During the taxable period taxpayer bought bulk candy at wholesale prices from various manufacturers in his own name and as Zerna Products Company, storing it either at East India or in a Chicago warehouse. Taxpayer used his own funds for this purpose and received the proceeds from the sales. He received the invoices from such supplies and issued invoices covering the sales. In conducting this part of the business, taxpayer used an office furnished him free of charge by East India.

Taxpayer kept no formal books and records of the kinds, quantities or costs of candy. He had no bookkeeper to record his business transactions and did not maintain a journal or ledger to record purchases and sales during the taxable years. Part of this candy was spoiled or unsaleable candy, including some he repurchased from Kroger under agreement. Whenever possible, he sold or traded the spoiled and inferior candy, principally to a William Schmeckebier, and sometimes at a profit.

The Tax Court's findings with respect to taxpayer's purchases of candy from suppliers at ceiling prices and his sales of candy to customers during the taxable period (omitting the names of the suppliers and customers) were as follows:

| | 1944 | 1945 | 1946 | 1947 |
|------|------|------|------|------|
| Purchases | $ 7,731.73 | $ 97,955.81 | $244,905.54 | $224,973.94 |
| Sales | 13,654.20 | 155,843.73 | 363,959.95 | 265,015.80 |

In addition to paying the invoice price of candy he purchased, taxpayer made "overceiling" payments to manufacturers and brokers. These payments were "bonuses" in excess of the ceiling price and were made in cash or in ingredients for use in candy manufacturing. The invoices of candy purchased in this man-

ner did not reflect the "bonus" payment but included only the manufacturer's ceiling price. Taxpayer included the "bonus" payment in the price he quoted to his customers for the candy. Kroger, his principal customer, knew that the cost of certain candy to them included overceiling payments but paid the cost without objection in order to get this merchandise.

The Tax Court found that taxpayer made overceiling payments of $2,000 in 1944; $20,000 in 1945; $40,000 in 1946; and $10,000 in 1947, and properly allowed these as part of the cost of goods sold. It then found and determined taxpayer's unreported income from profits from sales of candy during the taxable period to be as follows:

| | |
|---|---|
| 1944 | $ 3,992.47 |
| 1945 | 37,887.92 |
| 1946 | 79,054.41 |
| 1947 | 30,041.86 |

## Partnership Income

On November 1, 1944, taxpayer and Frank W. Brinkman formed a partnership to conduct a candy brokerage business in Chicago which operated under both the names of Frank W. Brinkman & Associates and Carol Lynn Products Company. Taxpayer advanced initial capital of $5,000, and Brinkman devoted full time to the business. The two partners agreed to share the partnership profits equally.

The partnership tax returns for the taxable years 1945 and 1946 showed taxpayer's share of the net income to be $1,096.30 and $1,433.79, respectively, and in 1947 reflected a loss to taxpayer of $1,945.87. Taxpayer did not report any of this partnership income or loss for any of the years 1945, 1946 or 1947. The Tax Court sustained the Commissioner's redetermination of taxpayer's distributive share of partnership income to be $12,936.08 in 1945 and $6,644.91 in 1946, and his share of partnership loss in 1947 to be $173.97.

## Business Expenses

In conducting his business of buying and selling candy, taxpayer incurred losses during the taxable years. These resulted from "slow-moving" and spoiled candy, pilferage and shrinkage reflected in inventory loss, prizes for sales promotions to induce sales by Kroger employees, sales promotions, entertainment of buyers and purchasing agents, traveling expense, and auto expenses. The Tax Court detailed as to each of these items the deductions claimed by taxpayer, the amounts allowed and disallowed by the Commissioner, and the determination it made of the correct amount of each of these expenses for each of the taxable years. Without setting out the various items, the following summary will reflect the totals as determined by the parties and as redetermined by the Tax Court:

| Expenses | 1944 | 1945 | 1946 | 1947 |
|---|---|---|---|---|
| Claimed by taxpayer | $29,650 | $31,980 | $37,850 | $23,745 |
| Allowed by Commissioner | 10,450 | 9,550 | 9,150 | 6,025 |
| Allowed by Tax Court | 10,550 | 10,650 | 10,250 | 7,125 |

## Fraud

Taxpayer's income tax returns for the years 1944, 1945 and 1946 were prepared by Lampert, taxpayer's lawyer, on the basis of information furnished by taxpayer. Taxpayer did not furnish Lampert with complete documentary evidence to support the claimed business deductions, did not inform him of the amounts of his distributive share of net income of Frank W. Brinkman & Associates for 1945 and 1946, or of the amount of commissions he received in 1946 from the Carol Lynn partnership. Lampert did not sign the returns he prepared because he did not believe there was sufficient substantiating evidence to support the information contained in them.

Taxpayer's income tax return for 1947 was prepared by Weber, an accountant, on the basis of information supplied by taxpayer. Taxpayer did not furnish Weber any records to support the claimed business deductions, nor did taxpayer inform him of any income from the Carol Lynn partnership in the form of commissions, profits from sales or partnership income.

In 1947, a revenue agent conducted an examination of taxpayer's income tax returns for the years 1944 and 1945. Taxpayer and Lampert were asked to produce petitioner's books and records including bank statements, canceled checks and other documents relating to the years under examination. Taxpayer and Lampert produced no records other than a list of companies that paid taxpayer commissions during the years under investigation. The total commissions listed were the same as the totals listed on the tax returns for 1944 and 1945. Taxpayer informed the agent that he had no income in addition to the commissions reported and that he was not engaged in any business other than as a candy broker.

In 1948, revenue agents made a re-examination of taxpayer's income tax returns for 1944 and 1945 and an original examination of his returns for the years 1946 and 1947. This examination began after leads were obtained during an investigation of Schmeckebier. Taxpayer was again asked to produce the books and records for the years under examination. The only records produced were records and canceled checks of the partnership, Frank W. Brinkman & Associates, and some of taxpayer's own canceled checks. Taxpayer produced no substantiating evidence to show the purpose for which the checks were issued. Taxpayer did not produce the names of any of his candy suppliers or customers nor did he produce any purchase and sales invoices showing procurement and disposition of candy. Taxpayer did not maintain complete records of all of his sales of candy and did not furnish the agents with documentary evidence substantiating the deductions claimed on his returns. The agents obtained their information as to taxpayer's purchases and sales of candy from the books and records of suppliers and customers of taxpayer, trucking companies and warehouses. From these records, the agents traced shipments of candy from the supplier to taxpayer and then to the ultimate customer. Taxpayer did not furnish the agents with a "workbook" showing all of his purchases and sales of candy during the taxable years.

The Tax Court then found that at least part of the deficiency for each of the taxable years involved here was due to fraud with intent to evade tax.

■ Taxpayer testified that his initial capital investment of $5,000 to the Brinkman partnership (Carol Lynn) represented money that belonged to his children and thereby sought to establish that they were the owners of the one-half interest, attributed to him, claiming in his petition that he held such interest as trustee for their benefit. There is nothing in the record to substantiate this claim except his own unexplained bare assertion. He admitted that his children did not report any gain or loss from the partnership. Brinkman referred only to taxpayer in his testimony. The Tax Court properly sustained the Commissioner on this point.

Taxpayer contends that the Tax Court erroneously determined the nature of his business in finding that he was in the business of buying and selling candy for his own account. He claims the evidence shows that his buying and selling activities were in connection with the procurement of candy for Kroger, and that he was a candy "broker." There is substantial evidence in the record to support the Tax Court on this issue and such findings are not clearly erroneous.

Taxpayer challenges many of the other findings as not being supported by substantial evidence, as clearly erroneous, and made in disregard of the evidence and absent proof of fraud by clear and convincing evidence. We have carefully

examined all of these contentions and have considered the record as a whole, and have concluded that taxpayer's contentions are not well founded. It would serve no good purpose to burden this opinion with a detailed statement of these charges. The Tax Court has treated this matter rather fully in its Memorandum filed January 31, 1958, Docket No. 57280, its final decision being entered March 27, 1958.

■ As was stated by the late Judge Lindley of this court in Pleason v. Commissioner of Internal Revenue, 7 Cir., 1955, 226 F.2d 732, 733, it is for the trial court "to weigh the evidence, draw inferences and declare the result  *  * [and] our only function is to determine whether the findings are clearly erroneous, that is whether upon the whole record, there is substantial evidence to support them and whether the court erred as to the law." See also, Wisconsin Memorial Park Co. v. Commissioner of Internal Revenue, 7 Cir., 1958, 255 F.2d 751, 753, and Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

■ We reject taxpayer's contention that he has established that the Commissioner's determination of deficiencies in his taxes were arbitrary and excessive or based on a formula which could not produce the correct amount of tax due so as to bring this case within the rule laid down in Helvering v. Taylor, 1934, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623. Absent such showing, the Commissioner's determination "has the support of a presumption of correctness, and the petitioner [taxpayer] has the burden of proving it to be wrong." Welch v. Helvering, 1953, 290 U.S. 111, 115, 54 S. Ct. 8, 78 L.Ed. 212; Wisconsin Memorial Park Co. v. Commissioner of Internal Revenue, supra, 255 F.2d at page 753. This does not mean that the Tax Court must agree with the Commissioner in all respects, and, in the instant case the Tax Court, under the evidence presented, did not feel bound to accept completely the Commissioner's determination and was not precluded from reducing the deficiencies as it did in a substantial amount.

Rogers v. Commissioner of Internal Revenue, 7 Cir., 1957, 248 F.2d 452, 453. The rule in Helvering v. Taylor, supra, does not prevent the Tax Court from exercising its function, in a proper case, of redetermining the deficiencies assessed by the Commissioner.

■ The Tax Court properly held that whatever overceiling payments had been made should be included in cost of goods sold in computing taxpayer's profits from sales, and credit was given accordingly. See Sullenger v. Commissioner, 11 T.C. 1076, 1077.

■ In determining the several categories of taxpayer's expenses or costs of sales, the Tax Court found that taxpayer failed to substantiate his claims beyond the point of proving their existence in part; and, consequently it properly made the best estimate it could from the evidence at hand in reliance upon the rule in Cohan v. Commissioner, 2 Cir., 1930, 39 F.2d 540, as approved by us in Pleason v. Commissioner of Internal Revenue, 7 Cir., 1955, 226 F.2d 732, 734. Deductions are a matter of legislative grace and "the burden is upon the taxpayer to establish the amount of a deduction claimed," Helvering v. Taylor, 1934, 293 U.S. 507, 514, 55 S.Ct. 287, 290, 79 L.Ed. 623. This he failed to do.

■ There is no presumption of fraud and the Commissioner has the burden of proof with clear and convincing evidence. We have set out in some detail the Tax Court's findings on this issue. "Fraud is a question of fact, and the Tax Court finding is binding if it is supported by substantial evidence." Bender v. Commissioner of Internal Revenue, 7 Cir., 1958, 256 F.2d 771, 774–775, and cases cited therein. We think there is substantial evidence in this record to support these findings of fraud by the Tax Court.

Finding no error in the disposition of this case by the Tax Court, the decision is

Affirmed.