**Sidney PERSSION and Caroline Perssion, Husband and Wife, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 13253.**

United States Court of Appeals
Seventh Circuit.

Dec. 13, 1961.

Donald S. Eisenberg, Madison, Wis., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Ronald C. Meteiver, Lee A. Jackson, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

In this proceeding for review of a decision of the Tax Court of the United States, which determined a deficiency in income tax of $3,631.09 for the year 1953, there is only one disputed item.

Mr. and Mrs. Perssion filed a joint return in which they reported a capital gain of $16,000 on a sale of furniture, fixtures, etc., for $18,000. The Tax Court found only $2,000 allocable to this sale price.

The facts are briefly as follows: Mr. Perssion has been engaged in the business of owning and managing rental

properties since the year 1924. In January, 1952, he purchased land and buildings at 1032–40 N. 12th Street, Milwaukee, Wisconsin, from Eva Pytel (including furniture, fixtures, etc., in the buildings). He asserts that the total purchase price of $33,348.50 included the rooming and boarding house business which Mrs. Pytel had been operating at that location for about ten years. Mr. Perssion contends that the rooming and boarding house had acquired a very good reputation as a result of which the County of Milwaukee Welfare Department often sent indigent persons for temporary lodging at Mrs. Pytel's. Mr. Perssion's books reflect the following allocation at the time of the purchase:

| | |
|---|---|
| Furniture and fixtures | $ 2,000.00 |
| Land | 6,000.00 |
| Buildings | 25,348.50 |
| Total | $33,348.50 |

For the first six months, Mr. Perssion rented the premises to Mrs. Pytel at a monthly rental not disclosed to the Tax Court. In July, 1952, he made an oral agreement with Mr. and Mrs. George Lawrence who continued to operate the rooming and boarding house business. The Lawrences paid Mr. Perssion $800 per month, which he reported as rent in his income tax return for 1952, and they retained all income in excess of that amount. They had an option to lease the premises after a six-month trial period. They took up this option. Mr. Perssion describes the arrangement as one whereby the Lawrences bought the rooming house business, fixtures and furnishings for $18,000 to be paid to him at the rate of $500 per month, with an additional monthly rental of $300. There was an option to renew for an additional three-year period. The agreement was to be put in writing, but the parties did not reduce it to writing until a much later time. From January 1, 1953, through October, 1953, the Lawrences paid Mr. Perssion $800 per month.

Meanwhile in July, 1952, Mrs. Pytel, the original owner and operator of the property in question, rented an adjacent apartment building from Mr. Perssion who subsequently sold that building to Mrs. Pytel, and she began to operate a rooming and boarding house there in competition with the Lawrences. When the Lawrences' business declined in the fall of 1953, Mr. Perssion reduced their monthly payments to $500, of which he allocated $300 to rent and $200 to the unpaid purchase price of the fixtures and furnishings. At the end of 1954, the monthly payments were reduced to $400, of which Mr. Perssion allocated $300 to rent and $100 to the unpaid balance. Mrs. Lawrence testified that she had thought the entire amount was monthly rental and that she did not understand that a part of the monthly payments were allocated to a purchase price until sometime in 1954 when she heard Mr. Perssion say something to that effect to her husband. Because of illness, Mr. Lawrence was unavailable as a witness in the Tax Court. He passed away after the trial.

On December 31, 1956, a written lease was executed covering the property here involved (and another parcel) for a term of 26 months beginning January 1, 1957, at a monthly rental of $300, with an option to renew for a four-year period at a monthly rental of $400.

Mr. Perssion's books showed an account entitled "Mortgages Rec—Geo. Lawrence, 1032 N. 12th Street" in which the monthly payments allocated to the sale of the fixtures and furnishings were posted from 1953 through September 30, 1959. There was no evidence, however, that the Lawrences ever executed a mortgage to Mr. Perssion. The remainder of the monthly payments was recorded as rent during 1953 through 1955.

In connection with the lease executed December 31, 1956, the Lawrences also executed a note for $7,800, the amount of the unpaid balance of the $18,000 purchase price, which was to be paid in monthly installments of $200, beginning December 31, 1956. The note form has a space for insertion of interest, but the space is blank. Provision is made for interest after the due date, and there is

a provision giving Mr. Perssion an option to cancel the lease in the event of default on the note.

In the return for 1953, the Perssions reported:

Gain on Sale of Furniture and Fixtures—
1030–40 N. 12th St.

|  |  |  |
|---|---|---|
| Sold January 2, 1953, for | $18,000.00 | |
| Purchased January 2, 1952, for | 2,000.00 | |
| Net long-term capital gain on sale | | $16,000.00 |
| Percentage of gain on sale | 88.89% | |
| Amount received in 1953 | $ 5,400.00 | |
| Percentage of gain | 88.89% | |
| Gain realized in 1953 | | 4,799.52 |
| Gain recognizable for 1953 (50%) | | 2,399.76 |

The Commissioner of Internal Revenue determined that only $2,000, the value of the furniture and fixtures on Mr. Perssion's records, was allocable to the sales price and that the remaining $16,000 was allocable to proceeds from the lease; that $4,800 of the $5,400 received from the Lawrences in 1953, and allocated by Mr. Perssion to payment on the fixtures and furniture, in fact represented rent covering the real estate which the Lawrences used in their operations; and that $600 represented proceeds from the sale of fixtures and furniture, as follows:

|  |  |  |
|---|---|---|
| Sales price of furniture and fixtures | | $2,000 |
| Cost of furniture and fixtures | $2,000 | |
| Less: Reserve for depreciation | 400 | 1,600 |
| Net profit in installment basis | | $ 400 |
| Gross profit ratio | | 20% |
| Gross proceeds of contract received in 1953 | | 5,400 |
| Less: Amount of gross rent income | | 4,800 |
| Gross proceeds from the sale of furniture and fixtures | | $ 600 |
| Long term capital gain realized in 1953 | | $ 120 |
| Amount of long-term capital gain recognizable for 1953 (50%) | | $ 60 |

The Tax Court found that the lease-rent-sale transaction was designed to disguise rent from real estate as long term gain from a sale. The Tax Court properly considered the substance of the transaction as distinguished from its form in determining the nature of the transaction for tax purposes. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935); Ingle Coal Corp. v. C. I. R., 7 Cir., 1949, 174 F.2d 569, 571.

Although it is here contended on behalf of Mr. Perssion that an element of good will in a going concern was included in

the sale of the furniture and fixtures, there was no allocation of the original purchase price to good will. Mrs. Pytel continued to operate the premises for about six months and then shortly thereafter renewed operation at a nearby location (which she purchased from Mr. Perssion) in competition with the Lawrences. The Lawrences acquired nothing in the nature of good will, such as a trade name, a right to sole operation in a particular area, or a staff with specialized knowledge. Grace Bros. v. C. I. R., 9 Cir., 1949, 173 F.2d 170, 176.

Mr. Perssion testified in the Tax Court that a fair monthly rental for this real estate in 1952 and subsequent years was $300. The Tax Court, however, also considered the fact that the Lawrences had paid a monthly rental of $800 in 1952.

■■ It is the function of the Tax Court to weigh the evidence and to draw inferences therefrom. Wisconsin Memorial Park Co. v. C. I. R., 7 Cir., 1958, 255 F.2d 751. We cannot state from our study of this record that the Tax Court's findings of fact in this case are clearly erroneous. The decision of the Tax Court must be affirmed.