**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CARLOS LANGSTON; PAMELA
LANGSTON,

      Petitioners - Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent - Appellee.

No. 19-9002
(CIR No. 4270-17)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **KELLY**, and **HOLMES**, Circuit Judges.
_____

Husband-and-wife taxpayers Carlos Langston and Pamela Langston (the

Langstons) appeal from a United States Tax Court decision upholding the

Commissioner of Internal Revenue's deficiency determinations for tax years 2012

and 2013, and assessment of accuracy-related penalties. Exercising jurisdiction

under 26 U.S.C. § 7482(a)(1), we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

**Port Carlos Marina**

In 2011, the Langstons purchased Port Carlos Marina (Port Carlos) from Mr. Langston's mother for $50,000 cash and a one million-dollar promissory note. The operation consists of two locations: (1) a primary location, with 100 covered dock slips and multiple structures, including a boat repair facility and (2) a secondary location, Masthead Marina, a sailboat cove with 50 uncovered boat slips, located 3 miles from the primary location. Shortly after the purchase, the Langstons formed Port Carlos as a domestic limited liability company.

Prior to the purchase of Port Carlos, Mr. Langston bought a Raptor RV for $69,092 and a Meridian 580 yacht for $245,920. He testified both assets were contributed to Port Carlos LLC and used exclusively for business purposes—the yacht was used as a boat sales office and the RV was used at Masthead Marina as an office and facility for nighttime security personnel. No formal documents reflect the transfer of these assets to the business entity.

**The 75th Place Property**

In 1997, the Langstons bought a home on 75th Place (the Property) for $143,000. In 2001, as part of a refinance for home improvements, they obtained an appraisal that showed the Property had a fair market value of $290,000. Beginning that year and continuing through 2004, the Langstons made renovations primarily on the exterior.

In 2005, the Langstons began a second round of renovations, and moved out of the Property and into an apartment. Because the apartment was too small for all their furnishings and other personal property, they used the garage and several off-site storage units for the overflow. As more garages became available, the Langstons moved items from the storage units to one of the four garages they ultimately acquired at the apartment complex. The Langstons lived in the apartment for more than three years until they purchased a home in 2008.

In the meantime, the renovations continued. By the time the work was substantially completed in 2010, the Langstons had spent more than $722,000 on the second phase. But even after the renovations were completed, the Property remained empty until 2011, when the Langstons' insurance agent told them their homeowners' insurance would be cancelled if the Property remained unoccupied. Only then did the Langstons attempt to rent the Property. Although the fair-market rent was approximately $2,500 to $2,800 per month, the Langstons rented the Property to one of Mr. Langston's former fraternity brothers for the prorated amount of $500 a month, because he only used the home five days a month. It was not until nearly a year later that the Langstons listed the Property for sale for $563,850, and they eventually sold it for $540,000 in February 2013.

**The 2012 and 2013 Tax Returns**

For tax year 2012, the Langstons claimed depreciation deductions for the RV and yacht of $139,996. They further reported $6,000 from rent and $56,875 in rental expenses, for a net loss of $50,875.

For tax year 2013, the Langstons claimed depreciation deductions for the RV and yacht of $46,655. As to the Property, the Langstons reported depreciation of $4,009 and the $50,875 net loss suspended on their 2012 tax return, for a net loss of $54,884. The Langstons also claimed a loss deduction of $436,633 from the sale of the Property.

Kathy Burch, a certified public accountant and attorney, prepared both the 2012 and 2013 returns. She acknowledged at trial that she did not receive any documentation from the Langstons reflecting the contribution of the yacht and the RV to Port Carlos LLC, or any records or other documentation substantiating the business use of either asset. Ms. Burch further testified she used a cost basis of $1,027,415 to calculate the loss on the sale of the Property.

**The Deficiencies**

In 2014, the Commissioner began an examination of the Langstons' 2012 and 2013 tax returns. As part of the examination, a revenue agent toured Port Carlos, including the yacht and the RV. The agent observed numerous personal items on the yacht that were inconsistent with its alleged use as a sales office, and nothing identifying the yacht as a sales office, such as signage or placards. She also saw several personal items in the RV, and again, nothing to indicate it was used as an office.

The Commissioner denied the deductions for the RV and yacht and losses on the sale of the Property. The Commissioner further determined because the

4

Langstons substantially understated their taxes for both years, they were liable for accuracy-related penalties.

Following a trial, the Tax Court upheld the Commissioner's determinations. Langston v. Comm'r, 117 T.C.M. (CCH) 1088, 2019 WL 1300196 (2019). The court found the Langstons: (1) were not entitled to depreciation on the yacht and the RV because they did not meet the substantiation requirements for "listed property"; (2) could not deduct losses on the sale of the Property because they failed to prove it was converted to income-producing use; and (3) were liable for accuracy-related penalties because they did not prove they acted with reasonable cause and in good faith when they relied on Ms. Burch's tax advice. This appeal followed.

**Discussion**

The Tax Court's conclusions of law are reviewed de novo. Esgar Corp. v. Comm'r, 744 F.3d 648, 652 (10th Cir. 2014). However, findings of fact are reviewed for clear error, and this court's review "is limited to asking whether the Tax Court's decision is supported by substantial evidence and is not clearly erroneous." Id. at 652 (internal quotation marks omitted).

"Substantial evidence has been held to mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wis. Mem'l Park Co. v. Comm'r, 255 F.2d 751, 753-54 (7th Cir. 1958) (internal quotation marks omitted). "Assuming the presence of such a quantum and quality of evidence then it is the Tax Court's province and function to draw inferences from it." Id. at 754. "A finding is clearly erroneous when although there is evidence to support it, the

5

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. (internal quotation marks omitted).

## A. Depreciation on the Yacht and RV

A taxpayer has the burden to show entitlement to deductions claimed. INDOPCO, Inc. v. Comm'r, 503 U.S. 79, 84 (1992). The statute in effect in 2012 and 2013, disallows certain business deductions, including depreciation, for "listed property" unless the taxpayer substantiates the business use of the property with "adequate records" or "sufficient evidence corroborating the taxpayer's own statement." 26 U.S.C. § 274(d)(4) (effective Dec. 21, 2005). At the relevant time, "listed property" was defined to include "any . . . property used as a means of transportation" or "any property of a type generally used for purposes of entertainment, recreation, or amusement." Id. § 280F(d)(4)(ii)-(iii) (effective Sept. 27, 2010). The yacht is a type of property generally used for entertainment or recreation, and the RV is used for transportation. More to the point, the Langstons agree the yacht and the RV are "considered 'listed property' under § 280F(d)(4)." Aplt. Br. at 21.

The implementing regulation for § 274(d) provides "no deduction or credit shall be allowed . . . with respect to listed property unless the taxpayer substantiates the requisite elements of . . . use as set forth" in the regulations. Treas. Reg. § 1.274 5T(b)(1). The required elements for use of "listed property" are: (1) the amount of each business use and the total use of the property for the taxable period; (2) the date of the use; and (3) the business purpose for the use. See id. § 1.274-5T(b)(6)(i)-(iii).

6

The taxpayer can substantiate the elements in either one of two ways—by "adequate records" or "other sufficient evidence." Id. § 1.274-5T(c)(2)-(3).

To meet the "adequate records" requirement, the taxpayer must maintain an account book, diary, log, *and* documentary evidence, which in combination, are sufficient to establish each element. See id. § 1.274-5T(c)(2). In the case of § 274(d) property, written contemporaneous evidence of business use is generally required. Id. § 1.274-5T(c)(2)(ii)(C)(2). Regardless, to substantiate the elements with "other sufficient evidence," the taxpayer must provide both "his own statement, whether written or oral, containing specific information in detail as to [each] element" and "other corroborative evidence sufficient to establish [each] element." Id. § 1.274-5T(c)(3)(i)(A)-(B).

The Tax Court did not credit the Langstons' testimony (or that of their general manager) that they used the yacht and the RV exclusively for business (no personal use). The Langstons argue that the revenue agent's testimony leading to a contrary finding should have been rejected because it was not corroborated by adequate documentary evidence or photographs, Aplt. Reply Br. at 3–4, but her testimony was not implausible or flatly contradicted by the record. See Anderson v. Bessemer City, 470 U.S. 564, 575–76 (1985). Regardless, the Langstons failed to meet the substantiation requirements. The Langstons offered only general testimony, without any detail such as the dates of use. More to the point, they failed to produce any records or documents regarding either the yacht or RV, and they concede they have

7

none.  As such, the Tax Court correctly determined the Langstons failed to meet the substantiation requirements of § 274(d).

Nonetheless, the Langstons argue they "were not required to keep strict documentation as required by § 274(d), substantiating the business use of the [yacht] or . . . RV since neither vehicle was being used as an entertainment facility."  Aplt. Br. at 19.  We agree with the Commissioner that "[t]his argument erroneously conflates two distinct provisions of § 274—either one of which has the potential to deny a taxpayer's claimed deduction." Aplee. Br. at 33.  Independent of § 274(a)(1)(A)-(B), which pertains to deductions for entertainment activities and facilities, § 274(d) disallows deductions for "listed property" unless the taxpayer meets the substantiation requirements.  The Langstons further argue that because there was no finding the yacht and the RV were *in fact* used for entertainment or recreation, they are not "listed property."  We disagree.  "Listed property" is the *type* of property generally used for entertainment, recreation, or transportation, which clearly includes the yacht and the RV.

## B.  Loss on the Sale of the Property

In the case of an individual, 26 U.S.C. § 165(c)(2), allows a loss deduction only for "losses incurred in any transaction entered into for profit."  For that reason, a "loss sustained on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of sale is not deductible under section 165(a). Treas. Reg. § 1.165-9(a).  A deduction for a loss on the sale of residential property is allowed, however, where prior to the sale, the

8

property is converted, *i.e.*, the taxpayer "rent[s] or otherwise appropriate[s]" the property "to income-producing purposes" and uses it "for such purposes up to the time of its sale." Id. § 1.165-9(b).

The loss on the sale of converted property is calculated as "the excess of the adjusted basis prescribed in [the Treasury Regulations] for determining loss over the amount realized from the sale." Id. § 1.165-9(b)(2). The adjusted basis "shall be *the lesser of either* . . . [t]he fair market value of the property at the time of conversion, or . . . [t]he adjusted basis, at the time of conversion." Id. § 1.165-9(b)(2)(i)-(ii) (emphasis added). Because the adjusted basis is *the lesser of either* the fair market value or the adjusted basis at the time of conversion, the loss cannot be calculated without a determination of fair market value.

"Whether an individual holds property for the production of income is a question of fact, and depends on the purpose or intention of the individual, as gleaned from all of the facts and circumstances of the particular case." Grant v. Comm'r, 84 T.C. 809, 825 (1985), aff'd, 800 F.2d 260 (4th Cir. 1986) (unpublished).[1] The factors to be considered include: (1) how long the taxpayer used the property as a personal residence; (2) whether the individual abandoned all personal use of the property; (3) whether the character of the property was recreational; (4) whether the property was offered for rent; and (5) whether the property was offered for sale. See id.

---

[1] Although decisions of the Tax Court are not binding on this court, we consider the Tax Court decisions we cite to be persuasive and relevant authority.

9

The Tax Court considered all the facts and circumstances and found the Langstons failed to demonstrate that they converted the Property to income-producing use. The Langstons nevertheless maintain that the relevant facts weigh in their favor and support a different outcome. But we cannot reverse the court's findings unless they are not supported by substantial evidence and are clearly erroneous. Esgar, 744 F.3d at 652. We have carefully reviewed those findings and conclude they are supported by the evidence.

We also affirm on an additional independent ground. The Langstons presented no evidence of the fair market value of the Property at the time of the conversion in 2005, and without this evidence there is no way to calculate the loss. *See* § 1.165-9(b)(2)(i)-(ii).

The Langstons contend that we cannot consider the issue because the Tax Court did not identify it as a basis for its decision. That is incorrect. We have consistently held that "we may affirm on any basis supported by the record, even if it requires ruling on argument not reached by the district court or even presented to us on appeal." Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1130 (10th Cir. 2011).

## C. Accuracy-Related Penalties

The Commissioner can impose accuracy-related penalties on the portion of an underpayment of tax attributable to "[a]ny substantial understatement of income tax[.]" 26 U.S.C. § 6662(a)-(b)(2). A taxpayer can avoid these penalties by showing "there was a reasonable cause for such portion and that the taxpayer acted in good faith." Id. § 6664(c)(1). We review the Tax Court's "factual determinations of

10

whether a taxpayer qualifies for the reasonable cause exception for clear error." Estate of True v. Comm'r, 390 F.3d 1210, 1244 (10th Cir. 2004) (internal quotation marks omitted).

In determining reasonable cause, "the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability . . . [judged] in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id. at 1245 (internal quotation marks omitted).  Relevant here, the Tax Court found the Langstons "are well-educated, sophisticated individuals" based upon their education and experience.  Langston, 2019 WL 1300196 at *6.  "Ms. Burch testified that she relied on oral and implied information from petitioners without documentation."  Id.

Reliance on the advice of a professional tax adviser "constitutes reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith."  Treas. Reg. § 1.6664-4(b)(1).  But the exception does not apply "if the taxpayer fails to disclose a fact that it knows, or reasonably should know, to be relevant to the proper tax treatment of an item."  Id. § 1.6664-4(c)(1)(i).

A taxpayer alleging reasonable, good-faith reliance on the advice of an independent tax advisor must prove:  "(1) [t]he adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good

11

faith on the adviser's judgment" Neonatology Assocs., P.A. v. Comm'r, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

The Langstons do not challenge the Tax Court's finding that they substantially underpaid their taxes; rather, they maintain the court erred in finding that they did not have reasonable cause or act in good faith. The Tax Court found the Langstons did not meet the second element of the Neonatology test, which requires the taxpayer to provide necessary and accurate information to the tax adviser. Specifically, the court found "Ms. Burch did not receive any documentation from [the Langstons] regarding the contribution of the assets to Port Carlos, nor did she receive any documentation substantiating their business use." Langston, 2019 WL 1300196 at *2. Instead, she relied upon oral and implied information. Id. at *6. As we have explained, these records are necessary to claim a depreciation deduction on "listed property." Moreover, Ms. Burch "advise[d] [the Langstons] that they needed to keep documents to show [the] business purpose" of the property. 14 Aplt. App. at 2222. The same failure applies to the Property. Ms. Burch advised the Langstons that they needed to know the fair market value of the Property in 2005 to calculate the loss. Id. at 2231–32. None was provided and the cost basis was used.

Moreover, the Langstons cannot avail themselves of a reasonable-cause defense because they must show that the advice of a qualified adviser took into account all facts and circumstances and was "not based on unreasonable factual or legal assumptions." Treas. Reg. § 1.6664-4(c)(1)(i)-(ii). Ms. Burch advised the Langstons to claim deductions for the yacht and the RV, even though she

12

"understood this property to be listed property." 14 Aplt. App. at 2215. And she also advised them to take the deduction on the Property without any evidence of fair market value.

The Tax Court's determination the Langstons failed to prove a reasonable-cause defense was not clearly erroneous.

The judgment of the United States Tax Court is AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge